### COSTICH v. CITY OF ROCHESTER.

(Supreme Court, Appellate Division, Fourth Department. January 7, 1902.)

MUNICIPAL CORPORATIONS—SEWAGE—OVERFLOW—INJURIES TO LAND—PUNITIVE DAMAGES.

 Punitive damages are not recoverable against a municipal corporation for injuries to land caused by the overflow of a creek in a time of severe storm, caused by the discharge of water into it from a defective sewerage system.

Appeal from trial court, Monroe county.

Action by Sepharine Costich against the city of Rochester. From a judgment in favor of plaintiff and an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

John M. Stull, for appellant.
Curtis Fitz Simons, for respondent.

HISCOCK, J. This action was brought to recover damages to plaintiff's real estate and crops thereon alleged to have been sustained on or about June 28, 1900, by the overflow thereof by waters discharged from one of defendant's sewer systems into Densmore creek, above plaintiff's premises, in the town of Irondequoit, Monroe county. It is claimed that said system, and the discharge thereof into said creek, was and is improperly constructed and arranged, and defective. The trial justice submitted the case to the jury as one of ordinary negligence, and permitted said jury to award to plaintiff punitive or exemplary damages. It was practically conceded, and certainly so intimated by this court upon the argument, that the charge was erroneous, and that for such error a new trial must be granted herein.

It was urged, however, that under his complaint plaintiff would be entitled to have this action retried as one in trespass, and that, therefore this court should consider whether, when said action was retried, it would be permissible to award punitive damages. It was also urged that other litigation was pending, springing out of substantially the same conditions as this action, and in which the same question of punitive damages was or might be involved.

The sewer system complained of was finished in 1893, and since then has been maintained and operated by the city as an essential part of its sewer construction. It was known as the "East Side Trunk Sewer," and at three different points in its length were placed storm overflows, designed to carry off a part of the surface water thrown into the sewer in times of heavy rains. They were not intended to dispose of sewage, and had no use or utility as part of the sewer plan, except to relieve the sewer of surplus surface waters during heavy rainstorms. One of these storm overflows emptied into Densmore creek a little way above the plaintiff's premises. Densmore creek is a natural water course, that originally had its source in the town of Brighton, and flowed in a generally northeasterly direction through the plaintiff's premises, and discharged into Irondequoit Bay. The overflow was made by cutting out the top portion of the sewer for a space of 12 feet along a line 4 feet from the bottom thereof, and the operation of the overflow was such that, when the volume of water in the sewer at that point became more than four feet deep, the surplus waters commenced to run over the open side or sill of the hole, and into the creek in question. On the day in question there was a severe thunder storm in the city of Rochester, accompanied by an unusually heavy fall of rain, and in the afternoon of that day large quantities of water commenced to be discharged out of the storm overflow above mentioned into Densmore creek above the plaintiff's premises. The creek was filled, and overflowed its banks, covering with water, not sewage, about five acres of plaintiff's premises along the line of the creek, about half a mile below the overflow, and causing the damages alleged in this case.

The sewer system complained of drained about 6,000 acres of land. It was constructed at a very large expense, and no fault is found with it, at least in this case, save in this respect: that it was liable to, and upon certain occasions did, cause such an overflow of Densmore creek as to inundate plaintiff's premises. It is insisted that upon the evidence in the case defendant should have known before constructing it that such a result would follow. It may be said in answer to this claim however, that, despite the manifest industry and care with which this case was tried in behalf of plaintiff, there is no evidence to show that any such trouble did result from the completion of this sewer in 1893 down to 1898, or possibly 1897. The evidence leaves it uncertain whether the overflow commenced prior to 1898. Since that date, however, and, as we say, possibly as far back as 1897, there has been an overflow at the point of plaintiff's premises once a year. This has occurred only after a rain storm of such severity as was only witnessed in Rochester once during a year, and whereof the rainfall would be in the neighborhood of $1^1/_{10}$ inches. The city,

by actions or by notices of claims, was officially informed of these overflows from the time they commenced, in 1897 or 1898. The protection to lands lying along the creek from such overflows involved the expenditure of a large amount of money. The other alternative which plaintiff urges should have been adopted would be the condemnation of the lands.

We have no difficulty in reaching the conclusion that, within the principles hereinafter referred to, plaintiff cannot recover punitive damages upon any such facts as are disclosed by this record. The construction of a sewer system so extensive as this one was, calling for the expenditure of very large sums of money, necessarily involved questions of judgment, the absolute correctness of whose solution could only be determined by experience after the sewer was completed. That experience for several years indicated that the problems had been properly met. Down to 1898 or 1897, upon the view most favorable to plaintiff, it is difficult to see how defendant, in the construction and maintenance of this sewer, could even be charged with negligence, much less with any such fault as under proper conditions would make a party liable in trespass for punitive damages. After said date, twice before the year in question, plaintiff suffered from an overflow of water caused by this sewer. Concededly, that overflow was the result of an extraordinary storm. Protection to plaintiff's and other premises from the conditions which then arose involved the expenditure of a large amount of money by the city, or resort might have been had to condemnation proceedings.

Upon the evidence, as it appears in this record, it may be fairly said that the authorities of the defendant might have relied upon such conditions not recurring in the year 1900. But assuming that they should not have relied upon such expectation, but should more promptly have taken steps to protect plaintiff and other landholders from damage, we certainly cannot hold, or permit a jury to find, that they were guilty of any such wanton or willful misconduct as, even in the case of a private individual, would have permitted the award of exemplary damages.

It is not necessary for us to, and we do not, hold that a municipal corporation could never, under any circumstances, become responsible for punitive damages, in an action of trespass or otherwise. But we are prepared to say that the circumstances which would make it liable for such damages must be very extraordinary, and almost impossible to conceive of. The theory and justification of punitive damages is that, in addition to giving mere compensation, they inflict a punishment upon the defendant for his misconduct, and serve as a warning, both to him and others, not to commit similar offenses in the future. The degree of misconduct necessary to warrant and uphold the allowance of them had been defined by different courts in varying language. All of these definitions, however, so far as they are worthy to be followed, involve the idea of the intentional, wanton, willful, or malicious commission of some illegal act, or of such a perverse and obstinate failure to discharge some duty as warrants the presumption of a reckless indifference to the rights of others which is equivalent to intentional misconduct. In Voltz v. Blackmar, 64

N. Y. 440, 444, the rule permitting such damages has been held to apply "in the case of a willful injury to property, and in actions of tort founded upon negligence amounting to misconduct and recklessness." In Railroad Co. v. Arms, 91 U. S. 489, 23 L. Ed. 374, it is held that a jury, after giving redress for an illegal act, "are not at liberty to go further, unless it was done willfully, or was the result of that reckless indifference to the rights of others which is equivalent to an intentional violation of them." And in a case of negligence, whether called gross or ordinary negligence, to authorize a jury to give more than compensatory damages, "there must have been some willful misconduct, or that entire want of care which would raise the presumption of a conscious indifference to consequences." In Association v. Loomis, 20 Ill. 235, 71 Am. Dec. 263, it is held that, in order to constitute such willful negligence as will authorize exemplary damages, the act done or omitted must be the result of intention. In an action for trespass, it has been held that exemplary damages may be awarded "where the injury has been wanton and malicious, or gross and outrageous," and which damages could not be recovered if the injury was inflicted without design or intention. Day v. Woodworth, 13 How. 363, 371, 14 L. Ed. 181, 185. In Sheldon v. Baumann, 19 App. Div. 61, 45 N. Y. Supp. 1016, it is said that exemplary damages are recoverable in an action for trespass upon real property, and allegations contained in a complaint that defendants "unlawfully, willfully, and wantonly" entered upon plaintiff's premises, and took therefrom personal property of the value stated, are, if proved, sufficient to justify the recovery of such damages. While a principal is liable in compensatory damages for acts committed by his agent within the scope or apparent scope of his authority, a principal who neither authorizes nor ratifies a willful trespass committed by his agent is not liable therefor. Vanderbilt v. Turnpike Co., 2 N. Y. 479, 51 Am. Dec. 315. Even a private corporation cannot be held in punitive damages for the misconduct of its representatives and agents, under any but exceptional circumstances. In Cleghorn v. Railroad Co., 56 N. Y. 44, 47, 15 Am. Rep. 375, 377, it is said that the master "is not liable to be punished in punitive damages unless he is also chargeable with gross misconduct. Such misconduct may be established by showing that the act of the servant was authorized or ratified, and that the master employed or retained the servant knowing that he was incompetent, or, from bad habits, unfit for the position he occupied. Something more than ordinary negligence is requisite. It must be reckless, and of a criminal nature, and clearly established. Corporations may incur this liability as well as private persons." See, also, Caldwell v. Steamboat Co., 47 N. Y. 282. In Fisher v. Railway Co., 34 Hun, 433, 437, it is said that, to render the employer liable for more than compensatory damages, "it requires proof of positive misconduct on his or its part." In Muckle v. Railway Co., 79 Hun, 32, 38, 29 N. Y. Supp. 732, 736, it is said: "The rule adopted by the courts of this state is such as not to permit the recovery of exemplary damages against the master for the act of negligence of his servant unless he has authorized his misconduct or ratified it, or unless the conduct complained of is that of the

servant while he is in the service after his unfitness for it is known to the master." In Railway Co. v. Prentice, 147 U. S. 101, 107, 13· Sup. Ct. 261, 263, 37 L. Ed. 97, 101, it is said that exemplary damages may be awarded "if the defendant has acted wantonly, or oppressively, or with such malice as implies a spirit of mischief or criminal indifference to civil obligations. But such guilty intention upon the part of the defendant is required in order to charge him with exemplary or punitive damages." And again, at page 111, 147 U. S., page 264, 13 Sup. Ct., and page 102, 37 L. Ed.: "No doubt a corporation, like a natural person, may be held liable in exemplary or punitive damages for the act of an agent within the scope of his employment, provided the criminal intent necessary to warrant the imposition of such damages is brought home to the corporation." We have referred to the principles governing the application of punitive damages, in cases of individual and private corporations, as leading up to the discussion of the question in the case of a municipal corporation. Plaintiff's counsel, as the result of great industry manifestly evidenced in his brief, has been able to call to our attention but one case appearing to hold that punitive damages might be awarded against a municipal corporation. That case is the one of McGary v. President, etc., cited, respectively, in 12 Rob. 668, 674, 43 Am. Dec. 239; Same v. City of Lafayette, 4 La. Ann. 440. The origin and framework of legal jurisprudence in the state of Louisiana are such that its principles very frequently are not applicable to similar questions in other states.

In addition, some cases have been called to our attention in which it has been decided that punitive damages could not be allowed against municipal corporations in those particular cases, and from which counsel has sought to draw the inference by implication that they might be allowed in some others. This species of authority, however, is, to say the least, unsatisfactory. Upon the other hand, various cases and text writers have held or intimated the rule that punitive damages could not be allowed against such defendant.

1 Sedg. Dam. (8th Ed.) p. 537, says:

"A corporation is liable for exemplary damages for its own act; that is, for the act of its directors or other agents whose act is the act of the corporation. Thus, gross negligence in hiring servants will subject a corporation to exemplary damages, and so will express authorization or ratification of the servant's .acts. It is held, however, that municipal corporations are not liable to exemplary damages."

Dill. Mun. Corp. (4th Ed.) § 1021, says:

"Actual damages only can in general be recovered. The case would be exceptional, indeed, when the plaintiff could properly recover vindictive or more than compensatory damages."

It is urged by counsel for respondent that the rule laid down by the text writers upon this subject is predicated ·upon decisions reached in actions of negligence, and that, therefore, it is not well founded. Authorities may be found holding that punitive damages may be awarded in a "negligence action," so called, and therefore the criticism does not dispose of these authorities. Very likely the facts in the· cases cited by the foregoing text writers, in connection

with their opinions, could not possibly sustain a judgment for punitive damages, but still the rule laid down and quoted as above was not so foreign to the discussion as to be without authority. In City of Chicago v. Martin, 49 Ill. 246, 95 Am. Dec. 594, the court says: "It is scarcely conceivable that a case could be made against a municipal corporation justifying punitive damages." And again, in City of Decatur v. Fisher, 53 Ill. 407, and in City of Chicago v. Kelly, 69 Ill. 477, the rule is laid down that vindictive or punitive damages are not to be given unless there is proof that the injury is willful, which is scarcely possible in the case of a municipal corporation.

In the case of Wilson v. City of Wheeling, 19 W. Va. 350, 42 Am. Rep. 780, it is said:

"The city is not a spoliator, and should not be visited by vindictive damages. Whatever may be the rule in cases for injuries as against railroad companies and corporations of a private character, and without reference to them, it seems to me that, in cases against municipal corporations for injuries sustained by individuals by the failure of such corporations to keep their streets in repair and the like, there is a rule for the measurement of damages. Vindictive or punitive damages ought not to be recovered in cases of this character."

In cases decided in our own courts, and wherein the facts charged the municipality, through the acts of its representatives, either with greater misconduct than in this case, or with illegal and intentional acts which were in the nature of a nuisance or trespass, it has never been suggested that punitive damages should be allowed, but the rule of liability has been limited by those of compensation.

In Seifert v. City of Brooklyn, 101 N. Y. 136, 4 N. E. 321, 54 Am. Rep. 664, plaintiff's premises were injured by the overflow of a sewer. Similar overflows of the same sewer in that vicinity had for years before the occurrence in question been a matter of public notoriety, and the city officials had had repeated notice of the damage done to plaintiff. It was held that such an inundation constituted a trespass rendering the party occasioning the injury liable for the damages caused, and that the defendant was so liable. It was said by the court:

"We are also of the opinion that the exercise of a judicial or discretionary power by a municipal corporation, which results in a direct and physical injury to the property of an individual, and which from its nature is liable to be repeated and continuous, but is remediable by a change of plan, or the adoption of prudential measures, renders the corporation liable for such damages as occur in consequence of its continuance of the original cause after notice, and an omission to adopt such remedial measures as experience has shown to be necessary and proper."

The foregoing case was stronger in its undisputed facts for the plaintiff than the present one. It was not suggested that the city was liable for punitive damages, and the rule laid down, as above quoted, excludes that idea.

In Cohen v. Mayor, etc., 113 N. Y. 532, 21 N. E. 700, 4 L. R. A. 406, 10 Am. St. Rep. 506, the city intentionally, and by the deliberate action of its representatives, authorized an obstruction in the streets which was held to be a nuisance. The rule was laid down, however, that in such a case of intentional misconduct the city would

be liable in compensatory damages, and no suggestion was made of any other. See, also, Speir v. City of Brooklyn, 139 N. Y. 6, 34 N. E. 727, 21 L. R. A. 641, 36 Am. St. Rep. 664.

In Lee v. Village of Sandy Hill, 40 N. Y. 442, the defendant was charged with having committed, through the act of its representatives, trespass in unlawfully tearing down a fence. No other rule of damages, however, was suggested than those by way of compensation.

In Loos v. Wilkinson, 113 N. Y. 485, 21 N. E. 392, 4 L. R. A. 353, 10 Am. St. Rep. 495, in dealing with the relations and liabilities between private individuals, the court said:

"It is the general rule, even in actions to recover damages for pure torts, that the plaintiff shall recover compensation for such damages only as he has actually suffered; and such is the invariable rule in all cases except where, by the settled rules of law, punitive damages may be awarded, and in such cases courts are constantly striving to come nearer to the rule of compensation, leaving the wrongdoer to the criminal courts for punishment."

There are weighty reasons, whether we seek to designate them by that very general term "public policy" or otherwise, which oppose the application of the doctrine of punitive damages to municipal corporations, even in those cases where they might be justifiable against private corporations. The latter are largely created and administered for purposes of profit or for some other personal object. Those who become members of them do so voluntarily, and in the majority of instances in the hope of gain. There are manifold and speedy ways by which to reach and replace any representative or agent who so mistakes or disregards his duty as to render liable in punitive damages the persons and interests represented by him. The municipal corporation is different. It is not organized for any purpose of gain or profit, but it is a legal creation, engaged in carrying on government and administering its details for the general good and as a matter of public necessity. The individuals who in the aggregate constitute it and submit certain of their affairs to its control and management are not always volunteers in so doing. If they happen to live within the limits of its jurisdiction, they become members of it to the extent of being represented by its agents, and having their property liable for their acts. While theoretically they have a voice in selecting the agents who shall represent and control the municipality, we know that practically it often happens that the government is not of their choice, and its management not in accordance with their judgment. Notwithstanding this, it has been justly held that the municipality, and through it the individuals who compose it, must answer in compensation to any one injured by the illegal acts of municipal officers who, while acting upon permitted subjects, make mistakes, or even transgress their powers. As we have seen, however, punitive damages only follow willful and intentional misdoing or reckless indifference equivalent thereto. It is scarcely possible that an act of either class should be cloaked in good faith. It would be a very rigorous and severe rule to go this step further, and make a municipality, and the property which it represents, liable for damages in excess of compensation, when some

representative or agent became absolutely derelict to the duty for which he was selected, and entered upon a course or act of defiant illegality. There is not any corresponding hardship to the injured party in denying this liability. He is entitled in a proper case to have full compensation for all injuries actually sustained. In many instances, as in this particular case, if he feels that legal damages will not sufficiently compensate him for a continuing or recurring trespass, he can find other relief by way of injunction upon the equity side of the court. In conclusion, both upon authorities and upon principle, we think, as was said by the court in Chicago v. Martin, supra, that "it is scarcely conceivable that a case could be made against a municipal corporation justifying punitive damages." The judgment and order appealed from should be reversed, and a new trial granted, with costs to appellant to abide event.

Judgment and order reversed upon questions of law, and a new trial granted, with costs to appellant to abide event. All concur.