# COURT OF APPEALS,

## May 11, 1915.

## THE PEOPLE ex rel. KENNEDY v. FREDERICK W. BECKER, AS SHERIFF.

(215 N. Y. 42.)

(1.) INDIANS*—WHEN SUBJECT TO JURISDICTION OF STATE COURTS.

An Indian violating police regulations of the state may be arrested and subjected to the jurisdiction of the state courts, where both the violation and the arrest occur outside of any reservation.

(2.) SAME—RESERVATION OF FISHING RIGHTS UPON LANDS CEDED BY SENECA TRIBE OF INDIANS DOES NOT GIVE MEMBERS OF TRIBE ANY RIGHT TO FISH SUPERIOR TO REGULATIONS IMPOSED BY STATE FOR PRESERVATION OF FISH FOR ALL OF ITS INHABITANTS.

A reservation by treaty of fishing rights upon lands ceded by the Seneca Tribe of Indians did not secure to its members a right to fish on the territory covered thereby which was superior to any police power and regulation which the state could exercise against all other persons. The treaty secures them from being excluded from the stream for fishing purposes and gives them a right or easement to go there as against their grantee or other persons. But this right is subject to such regulation as the state deems to be necessary for the advantage of all of its inhabitants in preserving game and fish.

People ex rel. Kennedy v. Becker, 165 App. Div. 881, affirmed.

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 9, 1915, which reversed an order of Special Term sustaining a writ of habeas corpus and discharging the prisoners represented by the relator from custody and remanded said prisoners to custody.

The facts, so far as material, are stated in the opinion.

* See Note, Indians, Vol. 30, p. 327.

*George P. Decker* and *Charles Van Voorhis* for appellant.

To hunt and fish without interference on these lands ceded qualifiedly to Morris was a right as fully secured as was exclusive enjoyment of the several parcels on which the Senecas expected to dwell. (Worcester v. State of Georgia, 6 Pet. 515; Jones v. Meehan, 175 U. S. 1; Northern Pacific R. R. Co. v. U. S., 227 U. S. 355; U. S. v. Winans, 198 U. S. 371; Dick v. United States, 208 U. S. 340; Holden v. Joy, 17 Wall. 244; United States v. Winans, 73 Fed. Rep. 72; Matter of Blackbird, 109 Fed. Rep. 139; Seneca Nation v. Appleby, 196 N. Y. 323; United States v. Pelican, 232 U. S. 442.) The New York legislature had no power to coerce tribal Senecas in enjoyment of their tribal rights even if the State Conservation Law assumed that power. (United States v. Kagama, 118 U. S. 384; People ex rel. Cusick v. Daly, 212 N. Y. 183; State v. Campbell, 53 Minn. 354; Matter of Blackbird, 109 Fed. Rep. 139.)

*E. E. Woodbury, Attorney-General* (*Blaine F. Sturgis* and *A. F. Jenks* of counsel), for the People, respondent.

The provisions of the Conservation Law must be observed by and enforced against Seneca Indians on the Cattaraugus Reservation who violate its provisions. (People v. Pierce, 18 Misc. Rep. 83; Cayuga Nation v. State, 99 N. Y. 235; Seneca Nation v. Christie, 126 N. Y. 122; Jemison v. Bell Tel. Co., 186 N. Y. 493; Hatch v. Luckman, 155 App. Div. 765; Silver Heels v. Maybee, 82 Misc. Rep. 48; George v. Pierce, 85 Misc. Rep. 105.)

*Wesley C. Dudley, District Attorney* (*Herbert R. Lee* of counsel), for the sheriff of Erie county, respondent.

The jurisdiction assumed by the justice of the peace in the

case of the relators was in all respects proper, lawful and in accordance with authority. (People v. Pierce, 18 Misc. Rep. 93.) The Indians having parted with their right of occupancy and with all their interest in the lands in question, the privilege of hunting and fishing thereon is subject to legislation by the state. (Ward v. Race Horse, 163 U. S. 504.) The state through its police power has an absolute right to regulate hunting and fishing by Indians. (Geer v. Connecticut, 161 U. S. 519; Jemison v. Bell Tel. Co., 186 N. Y. 493; People ex rel. Cusick v. Daly, 212 N. Y. 183.)

HISCOCK, J.:

By the treaty of " Big Tree " in 1797, the Seneca Nation of Indians ceded to Robert Morris their title to certain lands bounded on the south by Eighteen Mile creek, near Buffalo. Subsequently they ceded to other grantees their title to lands bounded on the north by said creek and lying opposite to those first mentioned. The first treaty contained a provision " excepting and reserving to them, the said party of the first part (the Seneca Nation) and their heirs the privilege of fishing and hunting on the said tract of land hereby intended to be conveyed."

Certain members of the Seneca tribe were arrested for taking fish at a certain point in Eighteen Mile creek, assumed to be covered by the reservation of fishing rights above set forth, in a manner and at a time prohibited by section 176 of the Conservation Law. (L. 1911, ch. 647, as amended.) On being arraigned before a justice of the peace they pleaded not guilty, and pending an adjournment granted at their request were committed to the custody of the defendant sheriff, from which the attempt was made to release them by this writ sued out in their behalf by the relator. It is to be noted that neither the alleged offense nor the arrest took place on any Indian reservation. Both occurred on lands in which the Seneca Nation and

the individual offenders had no claim or right outside of those possessed by any individual and those especially secured by the reservation which has been quoted.

Under these circumstances it appears that only two comparatively simple questions are involved in the disposition of this appeal. The first one is whether said reservation of fishing rights secured to the Seneca Nation and its members a right to fish on the territory covered thereby which was superior to any police power and regulation which the state could exercise against all other persons. The second is whether members of said nation if offending the police laws of the state in the respect indicated could be arrested while off the reservation and subjected to punishment by courts of the state. It seems to me that the first of these questions must be answered in the negative and the second one in the affirmative.

As has been said, this case does not deal with the rights of Indians on a reservation set apart for their use. It deals with the interpretation of a provision reserving to them the right in common with other people to take fish on territory which had been ceded away, and which does not purport to secure to them an exclusive and special privilege, but simply one which might be enjoyed by them in common with other people. The right of the state to enact police legislation for the preservation of game and fish is so well recognized and has been so widely exercised that there is no need to spend any time in demonstrating or justifying its existence. Beyond any question it can exercise this power as against other people who enjoy in common with the Seneca Indians the right to fish in Eighteen Mile creek. It seems to me that it would be an unusual and unreasonable interpretation of this reservation to hold that it relieved the Indians from all of these regulations which are applicable to such other members of the community. The interpretation that their rights are subject to the same regulation as would be applied to others seems much more reasonable and it does not

by any means result in emasculating the reservation which was placed in their treaty. Except for such reservation they might be and very likely would be excluded from going upon the stream at all for fishing purposes. The reservation secures them against any such result as this and gives them a right or easement to go there as against their grantee and any other persons. This fundamental right will not be destroyed. It will simply be subjected to such regulation as the state deems to be necessary for the advantage of all of its inhabitants in preserving game and fish.

This construction is in accordance with what was said in United States v. Winans (198 U. S. 371, 384). There by treaty the right had been reserved to certain Indians of "taking fish at all usual and accustomed places in common with the citizens of the Territory of Washington." The state of Washington granted the right to use fishing wheels which practically excluded the Indians from fishing at all at certain points, and the question was whether the state might do this. It was held that it might not; that such a course would practically exclude the Indians from their right of taking fish. But it was said that the rights thus secured to the Indians of "taking fish at all usual and accustomed places" did not "restrain the state unreasonably, if at all, in the regulation of the right. It only fixes in the land such easements as enables the right to be exercised."

So far as concerns the answer to the second question above stated it seems clear that an Indian violating police regulations of the state certainly may be arrested and subjected to the jurisdiction of the state courts where both the violation and the arrest occur outside of any reservation. (Ward v. Race Horse, 163 U. S. 504.)

The order appealed from should be affirmed, with costs.

WERNER, CHASE, COLLIN, HOGAN, MILLER and CARDOZO, JJ., concur.

Order affirmed.