ANGELINE NEPHEW, as Administratrix, etc., of ROBERT NEPHEW, Deceased, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 26126.)

Court of Claims, August 10, 1942.

*Charles E. Congdon* and *G. Sydney Shane* [*Thomas H. Dowd* of counsel], for the claimant.

*John J. Bennett, Jr., Attorney-General* [*Paul Muscarella, Assistant Attorney-General*, of counsel], for the defendant.

DYE, J.   This claim is for compensatory and exemplary damages for the death of a Seneca Indian resulting from injuries received at the hands of a State trooper.

In the decision filed herewith, the court has found that the State trooper, while making an arrest within the territorial limits of the Allegany Indian reservation where the decedent resided with his family, under tribal conditions, so violently struck the decedent that a brain hemorrhage resulted which was the proximate and primary cause of death; that following the beating, the unconscious Indian was placed without benefit of medical or other aid on the bare concrete floor of a cell in the Salamanca city jail where he had been taken.   He was pronounced dead about two hours later by the city coroner who had been summoned to examine him.

The court has found that the circumstances attending the assault and subsequent neglect failed to support the State's defense of official immunity based on authority and necessity.

The State's defense is wholly without merit.

1. The doctrine of *respondeat superior* is applicable.   (*Egan* v. *State of New York*, 255 App. Div. 825.)

2. The court has jurisdiction to hear, try and determine the claim.   (Court of Claims Act, § 8.)

3. Compensatory damages only are awarded, which include those elements mentioned in section 132 of the Decedent Estate Law, including funeral expenses as defined by subdivision 3 of section 314 of the Surrogate's Court Act.

4. Exemplary damages are disallowed. Retention of the trooper by the State in its employ, after the tortious act wantonly committed, does not constitute such a ratification as to subject the State to punishment by way of an exemplary award. As we understand it, the rule laid down in *Cleghorn* v. *N. Y. C. & H. R. R. R.* (56 N. Y. 44), and similar cases where it has been similarly cited, is authority for the proposition that when the employer has knowledge that the employee is unfit for the position and an injury thereafter occurs by reason of such unfitness, exemplary damages are a proper element of an award. Where it is not shown that the State was aware of anything in the trooper's past conduct sufficient to place it on notice of a brutal or assaultive tendency rendering him unfit for the job, compensatory damages suffice. State employees subject to civil service are selected on a basis of fitness and qualification, and under such circumstances, substantial and convincing testimony must be offered to show that the State knowingly employed a person known to be unfit, or that it authorized the wanton act, or that it ratified the act by the mere retention in employment, before an award for exemplary damages will be made.

The waiver of immunity (Ct. of Claims Act, § 8) contemplates that the injured claimant's right to restitution shall not be circumscribed by the sovereignty doctrine and when entitled thereto fair and reasonable compensation shall be awarded, but it does not necessarily follow from the waiver of the ancient rule as to compensation that the sovereign can be subjected to the fine and punishment of exemplary damages, even though the employee's tortious act may have been wanton. Sound public policy supports this rule which has long been sustained by the courts of New York.

5. The arrest was unlawful. Its avowed purpose was " to report the accident." (Vehicle and Tr. Law, § 70, subds. 5-a, 5-b.) No other car was involved and no injuries to persons or property of others resulted and if these elements existed, the fact that a town constable who was well acquainted with the decedent interviewed him as to the circumstances of the accident, and then ordered him " to go ahead and drive slow and go home and be careful," was substantial compliance with the statute sufficient to avoid criminal prosecution for leaving the scene of an accident without reporting. At most, the offense was a misdemeanor. (Vehicle and Tr. Law, *supra.*) The arrest occurred Sunday and at night. (Code

Crim. Proc. § 170.) The trooper had no warrant, nor did the elements exist necessary to authorize arrest without a warrant. (Code Crim. Proc. § 177.) The trooper made no effort to go before the nearest magistrate (Code Crim. Proc. § 165), and the reason stated " to report the accident " was insufficient.

These facts do not release the State since the trooper was acting within the apparent scope of his authority.

6. Many anomalies exist in the history of government relations with the Indians which have not been clearly resolved, but this much at least seems certain:

a. That the Federal government regards the members of the Indian nation living under tribal conditions on a reservation as its wards and respects and recognizes the tribal customs and tribal government within the reservation and refrains from interference except in certain specified penal offenses over which it retains and exercises general jurisdiction. (U. S. Code, tit. 18, § 548; see *United States* v. *Kagama,* 118 U. S. 375.)

b. The State recognizes the paramount Federal authority to deal with Indians for offenses committed within the reservation (*People ex rel. Cusick* v. *Daly,* 212 N. Y. 183), and has made no statutory enactments except those included in the Indian Law which are notable for their recognition of Indian autonomy. (*Matter of Patterson* v. *Seneca Nation,* 245 N. Y. 433.) State courts will take jurisdiction and deal with an Indian the same as a citizen when the violation and arrest occur outside of a reservation. (*People ex rel. Kennedy* v. *Becker,* 215 N. Y. 42.)

The trooper disregarded these established precedents. Both the arrest and the assault took place within the reservation.

7. Self-defense as a justification is not established by the facts. By his own words the trooper described in detail the punching of the Indian after he was " out on his feet." The decedent struck no blows, nor could he strike any blow while his arms were pinned behind his back in the sleeves of his jacket, neither could he avoid those aimed at him. Only the trooper testified to the hearing of foul and indecent language and a physical threat of injury. Disinterested witnesses agreed in the essential details as to what was said and what took place and their version of the affair is accepted by the court.

During the course of the trial, certain testimony was admitted over the objection of the claimant's counsel that the hearsay rule was being disregarded; he also moved to strike certain medical opinion based on facts assumed but not proven. The rulings first mentioned are not disturbed and the latter motions are denied. In both instances, the objectionable matters have not affected the result.