Richard S. Heller, J.
These two claims for assault arise from an Incident which occurred at Sno Top Inn In Oneida County, New York, on Sunday, October 9, 1955, shortly after 2:00 a.m.
The claimants herein were lawfully present at the inn and in no way participated In a disturbance which preceded the assault that forms the basis of these claims.
Sometime prior to October 9, 1955, two New York State troopers, McHugh and Carroll, were assigned by their superior officer to certain “plain clothes” investigations which were to take place on October 8 and 9. Neither trooper had any experience in investigation work of this type and neither trooper had been on the force for more than 18 months.
McHugh and Carroll were given orders to investigate pinball machines at certain places and also to check Sue Top Inn for after-hour sales of intoxicating beverages.
The troopers started their assignment at about 1:00 e.m. on October 8, 1955. During the afternoon and evening prior to their arrival at Sno Top Inn at 10:00 p.m. they had concluded the other assignments and drank some beer at various places.
■ On arriving at Sno Top the troopers went to the bar, drank beer and played a pinball machine from 10:00 p.m. until some time after 2:00 a.m.— the quantity of beer consumed by them being placed at a minimum of five and one-half bottles with the maximum at eight.
Legal closing hour for the sale of intoxicants was 2 :00 a.m. The troopers made several purchases after this time and eventually,,, at approximately 2:45 a.m. they endeavored to arrest someone for the violation.
Trooper McHugh got in back of the bar, which was crowded, and after showing a badge declared the bartender was under arrest. He immediately walked to the end of the bar and grabbed a bottle of beer from the hands of one of the patrons. *619 The patron snatched it back with the remark that “it is my beer ”, whereupon the trooper took another bottle from the bar and hit the patron over the head with it.
As to McHugh, a fight developed and while the evidence is conflicting there can be no doubt that McHugh was ultimately ejected from the inn and was either pushed or thrown from the porch.
In the meantime trooper Carroll, who stayed in front of the bar, informed patrons that the bartender was arrested. Carroll showed his badge but did not further identify himself. He assisted McHugh for a short time until he saw two people approaching him that he considered aggressive. Carroll then pushed two people and a fight started in which he was the loser.
McHugh, having been ejected from the inn, ran to his car and obtained two revolvers, one of .22 caliber, the other of .38 caliber, neither of which is a regulation gun issued to troopers. Then, facing a crowd of about 40 people who had gathered on the front porch, McHugh fired into the crowd using both guns, one in each hand.
Potter was shot twice while vaulting from the porch. Hayes was shot twice as he circled in the general direction of his car. Neither claimant in any way provoked the assault nor were they aggressive or troublesome.
Carroll reached McHugh and at about the same time matters quieted down. The troopers helped Potter into their car and drove to Lewis County General Hospital in Lowville, New York, a distance of 26 miles. The handling of Potter by the troopers left much to be desired but eventually Potter was given emergency treatment at Lowville and was later sent by ambulance to St. Elizabeth’s Hospital in Utica, New York, where he arrived at 6:00 a.m.
Hayes, after being shot, was driven by friends to the office of a doctor in Boonville. While he was undergoing emergency treatment, one of his friends called the substation of the State police to inform them of the incident at Sno Top. State troopers came to the doctor’s office and even though Hayes was wounded in both arms and was an innocent bystander, the troopers handcuffed Hayes and took him to the substation at Alder Creek where they kept him from 5:00 a.m. until approximately 4:30 or 5:00 p.m. Most of this time he was being questioned and the troopers were trying to induce him to sign some statements they had prepared. Hayes was only released after a demand by counsel. He did not sign the statement.
At Utica, Potter was being treated for his wounds by a four-hour operation. The chest wall was opened so that the patient *620 could be anesthetized; the spleen was removed; holes in the lung, liver, stomach and chest were closed and sutured. Two holes in the arms were dressed and medicated. An indication of the damage caused by the two bullets can be gained from the description of the operation.
Potter’s recovery was slow. He stayed in the hospital until November 6,1955. He returned home and was unable to resume work until March 1, 1956. He attempted to go back to work but was unable to continue and spent three additional weeks at home. His condition immediately following the operation was critical for about two weeks and on the tenth day following the assault he suffered a severe hemorrhage. Prior to the shooting and injury Potter was a strong, active alert man. Since that time he appears to respond slowly, requires more sleep and lacks initiative.
The claimant Hayes was totally disabled for about two weeks and partially disabled for some time thereafter. He was employed by his father and his salary continued during this disability so no claim is made for loss of earnings. His present complaint is continued pain across the course of the bullet in his left arm with a loss of grip in the left fingers. The right arm causes no inconvenience.
The officers at all times were acting within the scope of their employment but the methods used cannot be justified. The action by the troopers was negligent and wanton. The State must respond in damages. (Egan v. State of New York, 255 App. Div. 825; Nephew v. State of New York, 178 Misc. 824; Huff v. State of New York, 271 App. Div. 1040; Kline v. State of New York, 278 N. Y. 615; Hayes v. State of New York, 278 App. Div. 611; Tierney v. State of New York, 266 App. Div. 434.)
Claimant Darwin Potter for his personal injuries, pain and for all future suffering and for permanent injuries is awarded the sum of $22,000. In addition he is awarded the sum of $2,128.35 for medical and hospital expenses and $2,300 for loss of earnings. The claim for board is disallowed. Claimant Darwin Potter is entitled to recover the sum of $26,428.35.
Claimant Hayes for his personal injuries, pain, etc., for all future suffering, permanent injuries and for indignities he suffered is awarded the sum of $4,000. In addition he is awarded the sum of $60 for medical expenses. Claimant Raymond Hayes is entitled to recover the sum of $4,060.
The foregoing constitutes the written and signed decision upon which judgment may be entered. (See Civ. Prac. Act, § 440.)
Let judgment be entered accordingly.