RICHARD SHARAPATA, an Infant, by His Mother and Natural Guardian, ARLENE SHARAPATA, et al., Respondents, v TOWN OF ISLIP, Appellant.

Second Department, July 20, 1981

APPEARANCES OF COUNSEL

*Maloney, Murphy & McLoone (John J. McLoone, Jr.,* of counsel), for appellant.

*Corso & Engelberg (Richard A. Engelberg* and *Frank Mitchell Corso* of counsel), for respondents.

OPINION OF THE COURT

TITONE, J. P.

The primary question on appeal is whether the State of New York and its political subdivisions such as the defendant town, may ever be subject to punitive damages. Subsumed in such question (assuming the answer to it is in the affirmative), is whether the new matter alleged in plaintiffs' proposed amended complaint sets forth facts upon which punitive damages may be awarded against the defendant municipality.

## FACTS

At approximately noon on July 27, 1976, the infant plaintiff, Richard Sharapata, 12 years of age at the time, was playing in a neighborhood park owned by the defendant Town of Islip, known as Church Street Park or Michael Buckley Park. During his activities he sustained a fall and resulting serious personal injuries from a piece of playground equipment, to wit, a slide and tower apparatus called "Astroland". There was no park attendant on duty at the time, and apparently there never had been one.

The particular equipment (Astroland) consisted of a slide unit with suspended walkway to "diamond plate walk", which in turn leads to two slides and a tower suspended at a height of 10 feet.

The record reveals that on September 18, 1975, some 10 months before the accident, Joseph M. McNamara, loss prevention representative of defendant's insurer, the Royal Globe Insurance Company, sent a letter to Thomas Dobbs, safety officer of the town, in which he discussed in length the dangerous condition of "Astroland". McNamara informed Dobbs that three liability accidents had occurred on the slide as of the date of the letter, that "[t]hese accidents involved fall [sic] out of tower bars, fall from the rickety bridge and laceration of buttock by child sliding backwards having been unsuccessful in walking up the incline due to the worn down traction surface" of the slide. The letter from McNamara also contained the following graphic observations: "I noted children having squeezed

outside through an opening climbing atop the tower * * * I checked out the equipment and later spoke with two adults in the area who indicated that at night older youths climb atop this equipment throwing tires and objects onto the larger slide which is dented and buckled * * * The big slide's slide plate is stainless steel and has buckled portions and raised edges. There is a missing handrail on the walkway to the suspended walk. There are numerous sharp edges of fencing turned inward. The diamond plate walkway had been worn smooth and requires resurfacing. There are missing bolts holding vertical rods on the tower portion." McNamara concluded his observations in the letter of September 18, 1975 with the following statement:

"In view of the condition of this equipment, the continuing vandalism factor, and the climbing of youngsters on the outside of the equipment, the following recommendation is submitted:

"75—46. The vandalized Astroland slide unit should be removed in the interests of accident prevention."

Included with McNamara's letter of September 18, 1975, were Polaroid photographs, taken in July, 1975 by a person or persons in the insurance company's claims department, which purportedly depicted the deteriorating and hazardous condition of the slide and tower apparatus.

Evidently no action was taken by Dobbs on McNamara's letter until May 3, 1976. On that day Dobbs joined McNamara in a "hazard control survey" or tour of the Astroland site and three other targeted municipal sites. McNamara followed up his visits to the four municipal sites with a written inspection survey letter, dated May 5, 1976, which he sent to Dobbs. He noted therein that conditions had worsened since he conducted his original survey of the Astroland slide in the summer of 1975, and made the following specific observations: _

"one slide now has missing handrail
"broken board condition in wooden bridge walkway
"three chain supports for wooden bridge are broken
"missing handrail at beginning of walkway
"two vertical tower rods are missing

"the main slide (fibreglass [*sic*] body with stainless steel plate) has been cracked more than halfway through.

"The pending recommendation is * * * [t]he vandalized Astroland slide unit at Michael Buckley Memorial Park should be removed in the interests of accident prevention."

As indicated at the beginning of this opinion, on July 27, 1976 the infant plaintiff, while playing on the Astroland slide, apparently lost his footing, allegedly because of its defective condition, and tumbled from the 10-foot height to the ground. He sustained serious and disfiguring injuries to his lower back and spine. Medical and hospital expenses to the date of this proceeding amount to approximately $4,000, therapy expenses for anxiety reaction amounted to approximately $6,000, and physician expenses to approximately $3,000.

### PLEADINGS: MOTION TO AMEND COMPLAINT

On or about February 9, 1977, or slightly more than six months after the accident, plaintiffs had a summons and complaint served on defendant. In the complaint plaintiffs alleged that defendant had notice of the dangerous and defective condition of the slide prior to the accident, and that by permitting such dangerous condition to exist at the Buckley Memorial Park, and failing to warn of such condition, defendant, through its agents and employees, became liable for the injuries of the infant plaintiff. Plaintiffs sought $1,000,000 in compensatory damages in the first cause of action for the child's injuries and medical care, and $125,000 for the mother of the child, representing her loss of his services and expenditures for medical care incurred by her on her son's behalf. Issue was joined on or about March 22, 1977 by defendant interposing a verified answer.

Although plaintiffs were aware at the time the complaint was drafted of the letters of September 18, 1975, and May 5, 1976, from McNamara to Dobbs, they were unable to obtain copies of them until some time in late May, 1979. On June 18, 1979, approximately a month after obtaining the copies, plaintiffs moved to amend their complaint under CPLR 3025 (subd [b]) to increase their *ad damnum* by

adding to their first cause of action a prayer for $1,000,000 in punitive damages.

In his affirmation supporting the motion to amend the complaint, plaintiffs' attorney premised the prayer for punitive damages on defendant's alleged wanton and reckless conduct, i.e., its failure to remedy an unreasonably dangerous condition within its control, despite the fact it had received actual notice on two occasions of the condition, and the concomitant recommendation by its insurer for the removal of the slide and tower apparatus from the park. Counsel acknowledged that punitive damages are not readily assessable against a governmental body such as the defendant town. However, he argued that recent appellate authority exists which sustains the imposition of such damages if it can be established that a governmental agency acted in a grossly negligent manner by failing to supervise agents and employees whose conduct evinced a reckless indifference to the safety of persons within the ambit of its jurisdiction; or by failing to avert foreseeable misconduct on the part of an agent or employee which may have been directed by a governmental official.

In an opposing affirmation counsel for defendant asserted that the policy in New York State is that punitive damages should not be awarded against the State or its subdivisions. Furthermore, according to said counsel no appellate court in this State has ever upheld an award for punitive damages against the State, and plaintiffs' moving papers do not demonstrate that the case warrants such an award.

## DETERMINATION OF SPECIAL TERM

In granting plaintiffs' motion to amend their complaint in order to allege punitive damages in the amount of $1,000,000 against the defendant town, Special Term stated that there was much conflicting case law in New York as to whether the State and its political subdivisions are subject to punitive damages. After citing New York cases on each side of the issue, Special Term opined that "the growing trend is to impose punitive damages upon a municipality only when there is a clear demonstration of misconduct on the part of its agent, foreseeable or directed by its officials

or of a wanton or reckless employment or supervision of such agent". Special Term concluded that until the Court of Appeals clarifies the contradictory case law, it must allow the pleading of punitive damages against the State and political subdivisions.

### DETERMINATION ON APPEAL

Historically, courts in this country have not favored the recovery of punitive damages from a political entity such as a municipal corporation. Judicial disfavor in some instances was based on the inherent nature and status of a defendant as a municipality. In other instances the particular circumstances of the situation rather than the status of the defendant as a political entity was the basis for their not being recoverable. Even in many of the latter cases strong doubts were expressed by courts as to whether punitive damages can be recovered from a municipality under any circumstances.

Surprisingly, in New York State there is a relatively small number of cases, all at the trial level, in which a simple and definitive statement was rendered on the issue.

Specifically, in *McCandless v State of New York* (6 Misc 2d 391), a suit against the State on behalf of a female patient in a State hospital for the mentally retarded who had been assaulted by another patient resulting in her having an abortion operation, the Court of Claims (MAJOR, J.), in awarding compensatory damages under her causes of action alleging negligent and inadequate supervision, and absence of consent, respectively, stated flatly (p 395) : "The court is awarding compensatory damages only. The State is not subject to punitive damages". On appeal by the State, the Appellate Division, Third Department, affirmed the judgment in part and reversed it in part, holding that there was no evidence of lack of supervision, but that the incompetent was entitled to recover compensatory damages (of a reduced amount) for the abortion performed upon her without her parents' consent (3 AD2d 600). Neither the Third Department, nor the Court of Appeals in affirming the Appellate Division's order (4 NY2d 797), made any definitive statement with respect to the issue of punitive damages.

A contrary determination was rendered in *Hayes v State of New York* (80 Misc 2d 498). In *Hayes,* plaintiff, a mentally and physically deteriorated psychotic patient in a State hospital, while confined to a wheelchair and bed, was assaulted by an intoxicated "therapeutic aide" or attendant, with a record of intoxication while on duty. The Court of Claims (LENGYEL, J.), after trial, awarded $526.64 for plaintiff's injuries and medical expenses, and $5,000 as punitive damages. The trial court took the position that the actions of the State in hiring the attendant to work in a sensitive area of patient care with full knowledge of his alcoholic problem, and then continuing him in such sensitive area after two recorded instances of alcoholism on the ward, constituted recklessness on the part of the State as his employer sufficient to warrant an award of punitive damages.

However, when the *Hayes* case reached the Appellate Division (Third Department), that court reversed the judgment in favor of plaintiff and dismissed the complaint on the ground that the only evidence tending to prove the alleged assault by the "therapeutic aid" or attendant was hospital and personnel records which were hearsay and not admissible under the business exception rule. According to the Third Department the person or persons who made the entries did not witness the incident in question and the person who furnished the information that was entered was the claimant who was under no business duty to do so. Although the State also argued on appeal, *inter alia,* that the trial court erred in granting punitive damages since such damages cannot be awarded against the State, the Third Department did not address itself to such issue but stated: "We do not reach any other issue raised on this appeal" (50 AD2d 693, 694). The Court of Appeals affirmed the Third Department's determination (40 NY2d 1044).

There is also dictum in another case holding that the waiver of governmental immunity pursuant to section 8 of the Court of Claims Act*, does not extend to liability for

---

* "8. Waiver of immunity from liability. The state hereby waives its immunity from liability and action and hereby assumes liability and consents to have the same determined in accordance with the same rules of law as applied

punitive damages *(Nephew v State of New York,* 178 Misc 824 [Ct of Claims]). (With respect to the issue in this case it is important to note at this point that since civil divisions of the State such as the defendant town, have no independent sovereignty, when the State waived its immunity by enactment of the Court of Claims Act, immunity of municipal components disappeared to the same extent. However surrender of immunity was not absolute [*Spiegler v School Dist. of City of New Rochelle,* 39 Misc 2d 720, affd 19 AD2d 751].)

Research of cases involving a quest for punitive damages or an award or denial thereof, which have reached courts of the Appellate Division of this State, reveals that invariably such courts have not come to grips with the basic question, i.e., whether as a matter of public policy, the State of New York and its subdivisions may ever be subject to such damages.

For example, the Fourth Department in *Raplee v City of Corning* (6 AD2d 230, 232), stated "The question whether a municipality may be held accountable for exemplary or punitive damages in the absence of statutory sanction is not free from doubt." In *Matter of Mastrodonato v Town of Chili* (39 AD2d 824, 825), the Fourth Department again avoided the issue when it held, *inter alia,* in a tort action involving alleged misconduct on the part of a police officer, that since there was no evidence that defendants "employed unfit police officers or that they authorized or ratified any willful, wanton or malicious acts of such officers, assessment of punitive damages was not justified."

The Third Department also has a history of not reaching a decision on the issue. For example, in *Snyder v State of New York* (20 AD2d 827), where the Court of Claims awarded plaintiff $1,000 for compensatory damages and $3,000 for exemplary damages arising out of the misconduct of a member of the State Police, the Third Department made the following determination with respect to the latter

---

to actions in the supreme court against individuals or corporations, provided the claimant complies with the limitations of this article. Nothing herein contained shall be construed to affect, alter or repeal any provision of the workmen's compensation law."

award: "A different conclusion must be reached as to the award of $3,000 for exemplary damages. While the Attorney-General argues that under no circumstances can the State ever be held liable for punitive damages, *we do not reach that question*, as the proof here does not in any event, warrant an award of punitive damages". (Emphasis supplied.)

Also, in three cases decided since its decision in *Snyder (supra)*, the Third Department, on the factual situations presented, concluded, *inter alia*, that it was not necessary for it to render a definitive decision on the *bona fides* of any claim for punitive damages against the State (see *Ferrucci v State of New York*, 42 AD2d 359, 362; *Johnson v State of New York*, 44 AD2d 151, 152; and, *Cornell v State of New York*, 46 AD2d 702).

Undoubtedly, the strongest statement by a court in this State favoring denial of punitive damages against a municipal corporation was uttered by the Fourth Department in *Costich v City of Rochester* (68 App Div 623). In *Costich* a portion of surface water carried into a trunk sewer of defendant City during heavy rains was diverted into a natural watercourse, resulting in plaintiff's property abutting the watercourse being inundated by water from heavy rainstorms. In holding that a claim for punitive damages could not be sustained upon the facts disclosed in the trial record, Judge HISCOCK stated (pp 631-632): "There are weighty reasons, whether we seek to designate them by that very general term, 'public policy,' or otherwise, which oppose the application of the doctrine of punitive damages to municipal corporations, even in those cases where they might be justifiable against private corporations. The latter are largely created and administered for purposes of profit or for some other personal object. Those who become members of them do so voluntarily, and in the majority of instances in the hope of gain * * * The municipal corporation is different. It is not organized for any purpose of gain or profit, but it is a legal creation engaged in carrying on government and administering its details for the general good and as a matter of public necessity * * * [I]t has been justly held that the municipality and through it the indi-

viduals who compose it must answer in compensation to any one injured by the illegal acts of municipal officers who, while acting upon permitted subjects, make mistakes or even transgress their power. As we have seen, however, punitive damages only follow willful and intentional misdoing or reckless indifference equivalent thereto. It is scarcely possible that an act of either class should be cloaked in good faith. It would be a very rigorous and severe rule to go this step further and make a municipality and the property which it represents liable for damages in excess of compensation when some representative or agent became absolutely derelict to the duty for which he was selected and entered upon a course or act of defiant illegality. There is not any corresponding hardship to the injured party in denying this liability. He is entitled in a proper case to have full compensation for all injuries actually sustained. In many instances, as in this particular case, if he feels that legal damages will not sufficiently compensate him for a continuing or recurring trespass, he can find other relief by way of injunction upon the equity side of the court."

However, even in *Costich (supra,* p 626), the Fourth Department was careful not to make a flat statement that under no circumstances may a municipal corporation be liable for punitive damages, as is evidenced by the following statement found in Judge HISCOCK'S opinion: "It is not necessary for us to and we do not hold that a municipal corporation could never, under any circumstances, become responsible for punitive damages in an action of trespass or otherwise. But we are prepared to say that the circumstances making it liable for such damages must be very extraordinary and almost impossible to conceive of."

The Second Department has also declined to address itself to the issue despite numerous opportunities to do so. On a number of occasions when punitive damages were awarded after trial, this court, like the Third and Fourth Departments, decided not to reach such issue but instead came to the conclusion that there was insufficient evidence in the record to justify such an award. Thus in *Baynes v City of New York* (23 AD2d 756), an action to recover damages for personal injuries stemming from an alleged wanton

assault upon plaintiff by a police officer, this court, after affirming an award of $70,000 as compensatory damages, stated: "However, we find no proof in the record to justify any assessment for punitive damages against defendant City of New York". In *Chirieleison v City of New York* (49 AD2d 873), also stemming from personal injuries allegedly inflicted by police officers upon plaintiff, this court set aside a $15,000 award for punitive damages with a mere passing reference to the issue as to the validity of such an award against a municipality, when it stated, *inter alia: "Assuming that in a proper case a punitive damage award may be made against a governmental agency * * * no* facts were shown in this case to indicate that the City of New York was wanton or reckless in allowing the arresting police officer to serve on its police force". (Emphasis supplied.)

Moreover, in two cases involving a question of punitive damages, not after trial, but at the pretrial level, the Second Department still opted not to make a definitive ruling on whether or not such an award against a municipality was void per se. In *Eifert v Bush* (27 AD2d 950), this court modified an order of Special Term, by striking a provision granting plaintiff permission to examine the County of Nassau with regard to the police training given to two defendant police officers. Plaintiff had brought an action to recover damages for personal injuries and wrongful death. She alleged in her complaint that the collision was caused solely by the negligence of defendants in that the two police officers had commenced and continued an improper and negligent pursuit of the automobile in which plaintiff wife was injured and plaintiff's intestate was killed when the police car and plaintiff's automobile collided during the pursuit. Plaintiff, in seeking compensatory and punitive damages, further alleged in the complaint that the police officers took part in the chase even though they did not have sufficient training and instruction in the proper and acceptable methods and techniques of stopping, restraining or pursuing drivers of speeding automobiles. In denying plaintiff permission to have an examination before trial with regard to such police training, the majority of the court stated (p 951): *"We shall assume arguendo that, under*

*some circumstances, punitive damages may be awarded against a county.* Nevertheless, we see no reasonable possibility that an appellate court could sustain an award of punitive damages against the county". (Emphasis supplied.)

Finally, as recently as November, 1978, this court had before it an appeal such as the one at bar, to wit, by a defendant political subdivision from an order granting plaintiff's motion to amend her complaint to include a claim for punitive damages *(Wiley v County of Suffolk,* 65 AD2d 809, mot for lv to app den by App Div, 2d Dept, Feb. 26, 1979). In *Wylie,* plaintiff alleged in her original complaint that she was the victim of sundry "malicious" intentional acts perpetrated by police officers employed by defendant County of Suffolk. She did not specify whether her demand for monetary relief was for compensatory or punitive damages. Almost six years after she commenced the action plaintiff brought a motion to amend the complaint to specify that judgment was demanded "for compensatory and punitive damages". In affirming the granting of the motion by Special Term, this court, after noting that the policy of the courts is to permit amendments of pleadings liberally, and that the original complaint alleged malice, which "could" entitle plaintiff to punitive damages, made the following pertinent observation (p 810) : "Furthermore, the appellant County of Suffolk contends that punitive damages cannot be assessed against a municipality, both on the facts of this case and as a matter of law. *However, these contentions are raised prematurely* (see *Cornell v State of New York,* 46 AD2d 702)." (Emphasis supplied.)

Although the decision of this court in *Wylie (supra),* continuing the practice of judicial forebearance in reviewing the merits of a claim for punitive damages against a a political entity, is of recent vintage, this Bench has decided that such practice should come to an end. At this juncture to continue the general ambivalence evinced by the decisional law over the years with respect to whether punitive damages may ever be validly awarded against the State and its political subdivisions, would not serve the best interests of the public, our judicial system, and members

of the Bar. History teaches us that a vexing legal question will recur so long as appellate courts consciously and continuously choose not to make a definitive ruling with respect thereto.

■ We wholeheartedly concur with the general proposition that proposed amendments to pleadings should be liberally permitted unless the rights of a party are substantially prejudiced *(Sheldon Elec. Co. v Oriental Blvd. Corp.,* 56 AD2d 886, 887). However, we also believe that when a substantial question is raised as to the sufficiency or meritoriousness of a proposed pleading or matter contained therein, that such question should be resolved at the threshold in order to obviate the possibility of needless time consuming litigation.

Concededly the practice of refusing to pass upon the merits of proposed amended pleadings is rooted in precedent. However, in a case such as this one, such practice of avoidance may represent a procedure no longer tolerable. The First Department succinctly (and we believe accurately) stated its position on this issue of judicial forebearance in *East Asiatic Co. v Corash* (34 AD2d 432, 434), as follows: "The day when motion practice would be allowed to proliferate through avoiding coming to grips with the substantial question is past. We can no longer afford the time or judicial manpower for the repeated applications for the same relief which necessarily result from postponing decision". (See, also *C&K Realty Co. v LSFC Fabrics Corp.,* 66 AD2d 697, 698; *Di Carlo v Ford Motor Co.,* 65 AD2d 597, 598.)

■ Turning now to the merits, we conclude for the following reasons that punitive damages may not be alleged by a claimant against the State of New York and its political subdivisions.

Preliminarily, it is axiomatic that an award of damages is normally based on a theory of compensation to an injured party. An award of punitive damages is an exception to this rule *(City of Gary v Falcone,* 169 Ind App 295).

Traditionally, exemplary or punitive damages are generally awarded in those cases where the defendant is found to be deliberately, maliciously or grossly negligent. They

are awarded to an aggrieved over and above compensation for his or her injuries *(Foss v Maine Turnpike Auth.,* 309 A2d 339 [Supreme Ct, Me]). As such, they are nothing less than a windfall to any plaintiff who receives them *(Ranells v City of Cleveland,* 41 Ohio St 2d 1).

While compensatory damages historically have been held to be recoverable as a matter of right, punitive damages are not an absolute right *(Fisher v City of Miami,* 172 So 2d 455, 457 [Supreme Ct, Fla]). Basically, the justification for a punitive award is to deter others from committing similar wrongs *(Fisher v City of Miami, supra,* p 457). Punitive damages are penal in their nature and are allowed in excess of actual loss (compensatory damages) "where the wrong is aggravated by evil motives, in order to punish the wrongdoer for his misconduct and furnish a wholesale example" (14 NY Jur [rev ed], Damages, § 176, p 36).

With respect to the State of New York and its political subdivisions, we concur with the holding of a substantial majority of other jurisdictions throughout the United States that to permit punitive damages against such political entities would contravene public policy. Manifestly a political entity does not make, nor is it able to make, functional decisions through the entire body of those individuals who may be deemed to compose it. Necessarily it performs its various acts on behalf of its citizens and with their consent, through public officials and representatives. Logically, therefore, if the political entity must respond in compensation to a person injured as a result of the transgressions of governmental agents while acting in their official capacity, it follows that its citizens and taxpayers must bear the ultimate financial responsibility for compensating their injured brethren for his or her actual loss (cf. *Nixon v Oklahoma City,* 555 P2d 1283, 1285-1286 [Okla]).

With respect to punitive damages, however, it has been held that in order to be awarded they must further the *public policy* which justifies them *(Ranells v City of Cleveland, supra).* As indicated above the justification for an award of punitive damages is to punish the wrongdoer, both monetarily, and by making him a public example. However, to permit such damages against a public corpo-

ration would result in the anomalous situation of having the persons who would bear the burden of the punishment, i.e., the taxpayers and citizens, being from the self-same group who are expected to benefit from the public example which the granting of such damages supposedly makes of the wrongdoer *(Fisher v City of Miami,* 172 So 2d 455, 457, *supra; Newport v Fact Concerts,* 453 US —, 49 USLW 4860). "Were exemplary damages to be awarded against a governmental subdivision, the persons punished would be the taxpaying public. The very persons we seek to 'benefit' by example are the ones who bear the financial responsibility for compensating the injured individual for his actual loss, and, were we to permit it, the responsibility for the satisfaction of the exemplary damages award. *The function of exemplary damages is not served by requiring taxpayers to pay damages in excess of the actual loss"* *(Nixon v Oklahoma City,* 555 P2d 1283, 1285-1286, *supra;* emphasis supplied; see, also, *Chappell v City of Springfield,* 423 SW2d 810, 814 [Supreme Ct, Mo]). Although many statutory and other inroads upon the doctrine of sovereign immunity have been made, the levying of punitive damages against a public entity is not favored, since to do so would impose an unjust burden upon the innocent taxpayer without directly punishing the wrongdoer. The punitive purpose would thus be frustrated *(City of Salinas v Souza & McCue Constr. Co.,* 66 Cal 2d 217). Thus we conclude that the punishment of the wrongdoer is not an applicable justification for an award of punitive damages against a political entity such as the defendant town *(Chappell v City of Springfield, supra,* p 814).

Moreover with respect to the doctrine of punitive damages vis-à-vis the principal-agent relationship, in some jurisdictions, including the State of New York, the principal is liable for such damages only where he has authorized, participated in, or ratified, the act of the agent or servant *(Gill v Montgomery Ward & Co.,* 284 App Div 36). Such factors, however, are not present when the political entity is sued by a claimant since, unlike a private corporation, the taxpayers and citizens of the public entity, on whom punitive damages would fall if awarded, have collectively little, if any, direct control over the actions of their gov-

ernmental officials, are without effective power to discharge the officials during their elective or appointive term of office, and are unable to control their actions within the scope of their office (cf. *Nixon v Oklahoma City*, 555 P2d 1283, 1285, *supra; Willett v Village of St. Albans*, 69 Vt 330).

While citizens of a political entity may possibly be considered passive wrongdoers with respect to negligent and even wanton and willful acts of their public officials, it does not follow that they acquiesced collectively in the negligent acts of their officers and the continued wrongful administration of the affairs of the public entity to the point of being equally culpable with such agents in their continued wrongful acts (cf. *Nixon v Oklahoma City*, 555 P2d 1283, 1285-1286, *supra*). Indeed, in the instant case there is no reasonable possibility, despite plaintiffs' allegations of wantonness and recklessness, that it could be assumed that the citizens of the defendant town had condoned or ratified the purported willful nonfeasance of Thomas Dobbs, the safety officer of the town (cf. *Eifert v Bush*, 27 AD2d 950, 951, *supra*).

█ Finally, a brief discussion is necessary with respect to whether the statutory waiver of immunity from liability by the State (Court of Claims Act, § 8), subjects the State and its political subdivisions to a claim for punitive damages. In *Hayes v State of New York* (80 Misc 2d 498, 505, *supra*) Judge LENGYEL of the Court of Claims, after noting that section 8 of the Court of Claims Act provides that the State waives its immunity from liability and assumes liability and *"consents to have the same determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations"* (emphasis supplied), persuasively argues: "I am unable to find any language in the State Constitution or section 8 which says 'except in the instance of punitive damages.' This being so, to hold that the State of New York is not subject to an award for punitive damages is to impress a judicial limitation upon the clear and unequivocal language of the Legislature." We disagree with the reasoning of Judge LENGYEL in *Hayes*.

Generally, statutes wherein sovereign immunity against suit is waived must be strictly construed. Accordingly, a statute waiving a State's immunity from suit should not by a refinement of construction be so construed as to add to the rigors of a departure from the doctrine of sovereign immunity (81A CJS, States, § 299). The courts will not extend or enlarge by construction liability created or increased by statute, and will not go beyond the clearly expressed provisions of the Court of Claims Act as respects liability of municipal corporations (*McCarthy v City of Saratoga Springs*, 183 Misc 802, revd on other grounds 269 App Div 469, mot for lv to app den 269 App Div 912).

In similar vein, it has been held in the overwhelming majority of jurisdictions in this country that since punitive damages under common law were not properly awardable against a political entity such as a municipal corporation, in the absence of a legislative pronouncement to the contrary, a defendant municipality is not liable for such damages (McQuillin, Municipal Corporations [3d ed], § 53.18a; see *Chappell v City of Springfield*, 423 SW2d 810, 813, *supra; Fisher v City of Miami*, 172 So 2d 455, 457, *supra; Rascoe v Town of Farmington*, 62 NM 51; *Michaud v City of Bangor*, 160 Me 285; *Desforge v City of West St. Paul*, 231 Minn 205).

The rationale for such doctrine is that the primary basis for an award of damages is compensation, i.e., to make the injured party whole to the extent that it is possible to measure his injury in terms of money. The award of punitive damages constitutes an exception to the purely compensatory aspect of the damages concept, which is a means to right a wrong. Immunity statutes have, in effect, been enacted for the purpose of redressing the injured individual for the wrong done by agents or employees of the political entity (see *Hargrove v Town of Cocoa Beach*, 96 So 2d 130, 132-133 [Supreme Ct, Fla]), and not to punish the political entity for such wrong (cf. *Fisher v City of Miami*, 172 So 2d 455, 456-457, *supra*).

Simply put, in enacting the Court of Claims Act the Legislature undertook to compensate any person injured through a departure by the agents or servants of a political

entity from their duty. There is nothing in such law to indicate that the Legislature intended to authorize suits against a political entity for a penalty stemming from the misfeasance or nonfeasance of its agents or employees. As cogently stated by the late Justice BRANDEIS in *Missouri Pac. R. R. Co. v Ault* (256 US 554, 564) : "The purpose for which the Government permitted itself to be sued was compensation, not punishment."

Therefore, we conclude that the State of New York, and its political subdivisions, such as the defendant town, are not subject to punitive damages under existing law. In view of such holding, it is unnecessary for this court to reach the second issue herein, i.e., whether the proposed amended complaint sets forth facts upon which punitive damages may be awarded against the defendant town. Accordingly, the order of Special Term should be reversed, and plaintiffs' motion to amend the complaint to allege punitive damages denied.

MANGANO, GIBBONS and WEINSTEIN, JJ., concur.

Order of the Supreme Court, Suffolk County, dated July 30, 1979, reversed, without costs or disbursements, and plaintiffs' motion to amend their complaint is denied.