Roslyn Meistinsky, as Administratrix of the Estate of Jack Meistinsky, Deceased, Appellant, v. City of New York, Respondent.— In an action to recover damages for wrongful death, the appeal is from a judgment in favor of respondent dismissing the complaint on the merits at the close of appellant's case. Judgment reversed on the law and new trial granted, with costs to appellant to abide the event. The proof was that a police officer of respondent interrupted a holdup in the back room of a store and, in returning the fire of the holdup men, who were within not more than about eight feet of him, he fired one bullet at one of them and five at the other. Appellant's intestate, who was one of the victims of the holdup, was alongside the latter. Four of the officer's bullets struck him, as a result of which he died. A prima facie case of negligence on the part of respondent, on the theory that the officer had not received sufficient and proper training in the use of small firearms, was established. Nolan, P. J., Wenzel, Schmidt and Murphy, JJ., concur; Beldock, J., dissents and votes to affirm, with the following memorandum: The complaint alleges two theories of liability: (1) That respondent knowingly retained in its employ a police officer, inadequately trained and inexperienced in the use of small firearms at close range; and (2) that the said police officer, observing the holdup while on the public sidewalk, rushed into the store with gun drawn and proceeded to shoot, thus unnecessarily creating a danger and hazard, and imperiling the life and safety of the intestate and other persons, who were being held up by three bandits; that, under these circumstances, the police officer could readily have waited until the bandits emerged from the store and avoided inflicting the injuries sustained by the intestate, resulting in his death. I agree with the majority that there is no liability on the second theory. However, I disagree that there may be liability on the first theory. At about 6:00 P.M. on December 13, 1949, police officer Rosen (on the force for at least nine years)

saw two men (Puma and Santamorita) enter a store and walk to the back thereof behind a partition. The police officer followed them. As he entered the rear room of the store, he saw a holdup in progress. Santamorita, with his right hand in his pocket, which seemed to have the outline of a gun therein, was pushing five or six men up behind the left wall. Puma was "frisking" the intestate. Rosen announced, "I'm a cop. Drop your guns." Instantly, Puma started shooting at the police officer. The officer returned the fire. He fired one shot from his gun at Santamorita, who was about four or five feet from, and to the left of, the officer. Santamorita did not fire any shots but ran from the store. Puma was about six or eight feet in front of the officer. The intestate was at Puma's right, as the officer faced them. Puma fired several shots at the officer. The officer fired the remaining five shots of his gun at Puma. Four of the bullets struck the intestate, as a result of which he died. In my opinion, the dismissal of the complaint at the close of appellant's case was proper because there was no proof of any prescribed, accepted, or recognized form of training for police officers in large municipalities with respect to the use of small firearms in emergency situations such as were here present. The proof in behalf of appellant of the method of training in the use of firearms by the Federal Bureau of Investigation is not such proof. Under the circumstances of extreme emergency here present, it cannot be said that the accidental shooting of the intestate, who was standing alongside the bandit firing shots at the police officer, was the result of lack of adequate training by the respondent sufficient to hold it liable in negligence.