Hyman Korn, J.
This action was tried to the court without a jury solely on the issue of liability. Findings of fact and conclusions of law were waived.
On the evening of February 4, 1960, the plaintiff, Anna M. Hacker was shot while standing in the bedroom of her brother-in-law’s apartment located at 1931 Tomlinson Avenue, The Bronx, New York. The bullet which struck her was fired from a revolver held by her husband, George W. Hacker, a New York City probationary patrolman and a codefendant with the City of New York. At the time George W. Hacker was standing in the living room which was separated from the bedroom by a *1004 kitchen. Hacker stated that after cleaning his service revolver preparatory to an inspection the following day and while returning same to its holster the weapon accidentally was discharged causing most serious injuries to his wife.
Hacker was appointed a probationary patrolman on January 4, 1960. He was undergoing a mandatory training course (Recruit Indoor Lesson Plan) given to all probationary patrolmen by the New York City Police Department. The course of instruction consisted of 16 lessons. Probationary patrolmen are required by their employer, the Police Department, to purchase and possess service revolvers of the type involved in this action. A considerable portion of the entire training program deals with the care, use and handling of firearms. By February 4,1960, the date of the incident, Hacker had completed 5 lessons of the 16 session course. Pursuant to the curriculum established by the Police Department, all or nearly all of the remaining sessions dealt with the instruction, of the use, care and handling of firearms. Sufficient emphasis upon this subject was also placed in the syllabus to those five lessons completed prior to the accident. The training concerning the care, handling and use of firearms were given orally and no written material or texts were used or distributed.
The issue to be determined is as to whether the defendant Hacker or the defendant the City of New York or both defendants are liable to the plaintiff.
There is no difficulty in resolving the question of defendant Hacker’s liability. “A very high degree of care is required from all persons using firearms in the immediate vicinity of other people, no matter how lawful, or even necessary, such use may be ” (4 Shearman & Redfield, Law of Negligence, § 761, p. 1742). In addition, paragraph 38.0 of chapter 2 of the Rules and Procedure of the Police Department provides: “ a member of the department shall rme the utmost care in handling firearms and guarding explosives.” The cleaning of a revolver in an apartment with people present is in total disregard of the basic standards of safety. It is in direct contravention of even the initial basic precepts set forth in the course of instruction given to all recruits by the Police Department.
Violation of these principles constitutes negligence. The handling of a .38 Colt revolver which was in good working order in such a manner as to permit its accidental discharge is implicitly contrary to the basic concepts relative to the proper care and handling of a dangerous weapon. Hacker, in cleaning and handling his gun, obviously did not use that “utmost” *1005 degree of care which the instructions and rules of the Police Department required. If he had, the discharge of the gun and the tragic accident would not have occurred. “ Some acts, such as shooting, are so imminently dangerous to any one who may come within reach of the missile, however unexpectedly, as to impose a duty of prevision not far from that of insurer ” (Palsgraf v. Long Is. R.R. Co., 248 N. Y. 339, 344).
Plaintiff contends that the liability of the city is based on the following grounds: (1) the doctrine of respondeat superior-(2) permitting a probationary patrolman to possess a dangerous weapon prior to receiving adequate training in the use, care and handling of such a weapon; (3) failure to provide a regulation as to the place and manner in which a service revolver was to be cleaned.
The city urges that there is no liability on its part for (1) Hacker was not at the time of the incident actually engaged within the scope of his duties as a patrolman and (2) that the accident did not happen as alleged by the plaintiff.
The law is now well settled in this State that a municipality may be cast in liability for the negligence of its officers or employees engaged in performing functions necessitated by their official positions (Court of Claims Act, § 8). The legal immunity heretofore enjoyed by the civil division of the State — its counties, cities, towns and villages — no longer exists (Bernadine v. City of New York, 294 N. Y. 361; Burns v. City of New York, 6 A D 2d 30). “ The State and every political subdivision have unconditionally surrendered their sovereign immunity. A municipality may now be cast in liability on precisely the same basis as any individual who is obligated to discharge the governmental function involved and who fails in that duty * * * In other words, in each case the test now is whether an individual or private corporation, assuming that he or it were obligated to discharge the governmental duty involved, would be liable to the injured person for a breach of that duty ” (Runkel v. City of New York, 282 App. Div. 173, 178).
In determining whether the defendant, the City of New York, is liable to the plaintiff we must decide whether the acts complained of were committed within the scope of Hacker’s employment. It is elementary that the master is responsible for the wrongful acts of the servant causing injury to a third person, provided the servant was at the time acting for the master, and within the scope of business entrusted to him. Where authority is conferred to act for another, without special limitation, it carries with it, by implication, authority to do all things necessary to its execution; and when it involved the exercise of the *1006 discretion of the servant, the use of snch discretion is a part of the thing authorized, and when exercised, becomes as to third persons, the discretion and act of the master, even if the servant departed from the private instructions of the master, so long as he was engaged at the time in doing his master’s business or was performing an act which he would not be engaged in were it not for his employment (37 N. Y. Jur., Master and Servant, § 150; Rounds v. Delaware, Lackawanna & Western R.R. Co., 64 N. Y. 129; Irwin v. Klein, 271 N. Y. 477; Nalli v. Peters, 241 N. Y. 177; Buck v. Standard Oil Co., 224 App. Div. 299, affd. 249 N.Y. 595). “ The degree of responsibility conferred upon the employee is an important consideration in determining scope of employment, for, as the court put it in Cohen v. Dry Dock, E. B. & B. R. R. Co. (69 N. Y. 170, 173): ‘ The master who puts the servant in a place of trust or responsibility * * * is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper * * * goes beyond the strict line of his duty or authority, and inflicts an unjustifiable injury upon another.’” (Froessel, J., in Becker v. City of New York, 2 N Y 2d 226, 232.)
‘ ‘ That the act was indiscreet or in excess of authority may not preclude liability if it be related to the general scope of employment ” (Burns v. City of New York, 6 A D 2d 30, 41). (See, also, Collins v. City of New York, 11 Misc 2d 76, affd. 8 A D 2d 613, affd. 7 N Y 2d 822.)
The principal issue in this case, thus, is confined to the question as to whether Hacker at the time he was cleaning his revolver and in the act of returning it to its holster negligently permitted it to be fired, was engaged in acting for his employer, the City of New York, within the scope of the business entrusted to him and within the general scope of his employment.
By virtue of the peculiar nature of a policeman’s employment, he does not cease the functions of his job when his hours of active duty end, but is charged with the preservation of peace and the suppression of crime when in an off-duty status should the need arise. (18 McQuillin, Law of Municipal Corporations, § 53.80b, p. 340.) Paragraph 47.0 of chapter 2 of the Bules and Procedures of the Police Department provides: “ A member of the force shall be fit and subject to duty at all times except when on sick report. He shall devote his entire time and attention to the services of the department ”. Paragraph 23.0 of chapter 25 provides: “Members of the force shall carry their regulation service revolvers at all times ”. These rules are essential to enable the Police Commissioner to *1007 protect the safety and order of the city and to be able to cope with any and all emergencies (Flood v. Kennedy, 12 N Y 2d 345).
Although Hacker was assigned regular hours of active duty, he was in fact on call 24 hours a day and subject to duty at all times. In recognition of this duty, Hacker was required to carry his service revolver at all times. The obligations of his employment have recently been cogently outlined by the late Mr. Justice Greenberg in Collins v. City of New York (supra, pp. 78-79) wherein he stated: 11 A member of the police force is required to carry his regulation service revolver at all times * * * . The apparent basis for this rule is that the off-duty policeman is required to be available to perform in his employer’s behalf at all times even though technically off duty. The fulfillment of this obligation to be available for service and to be prepared for service constitutes positive performance of the requisites of the policeman’s employment. Such performance even in a negligent or imperfect manner contrary to the warrant of section 192 does not refute, alter or terminate the intrinsic character and nature of the act. In these circumstances there exists no affirmative pursuit by the policeman of an interest which could be termed personal, inimicable or otherwise separate and distinct from the performance of his employer’s command. The employer is absolved of liability where the employee is not participating in any act or function beneficial to the employer’s interest or where the employee is clearly acting in furtherance of his personal interest. The defendant policeman’s employment is of a divisible character, viz., on tour or patrol — active duty; off duty — available for emergency duty. The instant circumstances demonstrate that the defendant policeman, though technically within the off-duty classification, was engaged in the execution of a function specifically prescribed by the defendant employer, the City of New York, and the careless or negligent performance of such duty — carrying a gun — nonetheless constituted performance of a requirement of his employment and in furtherance of his employer’s interest. The employer is therefore responsible for the consequences of such acts.”
All police officers, including defendant Hacker, are under a duty to keep their service revolvers in clean and working order. Periodic inspection of revolvers and holsters is provided for by paragraphs 5.0 and 5.10 of chapter 20 of the Rules and Procedures of the Police Department.
In addition par. 2.0 of chapter 25 contains the following requirement: ‘1 Members of the Department are responsible *1008 for the proper and authorized use of their uniforms and equipment.” The duty so imposed could be discharged during other than his working hours. There was testimony that if Hacker did not have his equipment in proper order at an inspection, he could be subject to sanction by the department. There was further testimony that the revolver had to be cleaned by Hacker, and the place where, and the time when, to clean the gun was left to Hacker’s discretion.
Hacker, in undertaking to clean his service revolver, acting in fulfillment of his employer’s rule, imposing upon him the duty to constantly keep his service revolver in a good and clean condition, knowing that his gun was to be inspected upon the day succeeding the one on which the accident occurred, acted within the scope of a patrolman in the service of his master, the City of New York.
It cannot be gainsaid that in the performance of a police officer’s duty, the quick use of his firearm is clearly a possible necessity. Personal safety may depend upon the proper functioning and cleanliness of the weapon. It is indisputable that the exigencies of a police officer’s job require a clean gun, and that any harm resulting from the performance of this duty is chargable to his employer, the City of New York.
In a case somewhat paralleling the ease at bar, Rives v. Bolling (180 Va. 124), an “ off duty” policeman was cleaning his gun when it was caused to be discharged, resulting in the injury of another person present at the time. The court held that the act of cleaning the gun was an act in furtherance of the master’s business, and that the doctrine of respondeat superior was fully applicable.
In a similar case, Peer v. City of Newark (71 N. J. Super. 12) the court, in affirming an award to plaintiff, held that the doctrine of respondeat superior would be applied and that a municipality would be held liable where it failed to sufficiently train a patrolman in the off-duty handling of his gun, which was caused to discharge as he removed his revolver from his holster prior to performing a personal matter of his own.
The court will now discuss the plaintiff’s contention that defendant Hacker was entrusted with a dangerous weapon, without adequate training in the use thereof. An employer who requires an employee to perform acts with reference to a dangerous instrumentality has a duty to ascertain such employee’s qualifications before entrusting him with such dangerous instrumentality. The testimony established that it was the procedure of defendant city to require a probationary *1009 patrolman to commence carrying and caring for a revolver immediately upon the inception of his employment.
The court learned that subsequent to the initial imposition of this duty, probationary patrolmen were required to complete a 16-lesson course. Each lesson contained instructions on the care and handling of firearms. Implicit in the curriculum of this course is a recognition by the defendant city that the proper care and handling of a revolver required considerable training and instruction. Despite this acknowledgment, defendant city required Hacker to handle and clean his revolver before he had received sufficient and thorough training. This constitutes negligence. That Hacker had participated in 5 of the 16 sessions of instruction prior to the accident does not diminish the negligence of his employer in requiring him to handle and care for a revolver before he had completed what the city itself deemed the requisite course of instruction. All of the remaining 11 lessons included further instruction in the care and handling of firearms. The defendant city’s exhibit and expert’s testimony established that the 16th or final session of instruction included the complete maintenance of the revolver, in which the probationary patrolman actively participated in the care, handling and maintenance of the revolver.
When an employer entrusts his employee with a firearm for use in the course of his employment, the employer must give his employee adequate training and instruction in the proper use, care and handling of the firearm so as to prevent the employee from doing unintentional harm to himself or others (Finkelstein v. Kramer, 133 App. Div. 565, affd. 197 N. Y. 594). In the recent case of Meistinsky v. City of New York (285 App. Div. 1153, affd. 309 N. Y. 998) a policeman, while engaged in a gun battle with a bandit, shot and killed an innocent bystander. The City of New York was held liable for not furnishing the officer with sufficient training in the use of a gun and not compelling him to practice sufficiently. In a case of similar purport (McAndrew v. Mularchuk, 56 N. J. Super. 219), the court held that, if the alleged inadequacy in training of a reserve policeman in the use of a gun was proximately related to the injury of plaintiff, then the municipality could be held liable for its negligence in assigning such a policeman to police duties even without regard to the doctrine of respondeat superior. Moreover, the court held that if it were found the training had been given, the municipality would be liable under the theory of respondeat superior.
The absence of complete training in cleaning and handling a weapon before being required to do so alone, constituted a *1010 failure by the city to adequately instruct Hacker with reference to the dangerous instrumentality it compelled him to handle and care for on behalf of the city. ‘ ‘ The record here indicated that the machine in question was a dangerous machine, either in its nature or its condition of repair; that claimant was not reasonably instructed in the use of this machine ”. (Paige v. State of New York, 245 App. Div. 126, 129.)
The court in this determination does not pass upon the remaining contention raised by the plaintiff concerning the absence of the promulgation by the Police Department of a regulation governing the place and manner of cleaning weapons. The disposition of the contentions passed upon is sufficient for all purposes.
The court finds that there was no substantiation to the city’s contention that the accident happened in a manner different than alleged by the plaintiff. To find otherwise would be a premise based on speculation.
The court finds that the plaintiff has sustained the burden of proof by a fair preponderance of the credible evidence and finds in favor of the plaintiff as against both defendants on the issue of liability, and judgment is directed accordingly. The assessment of damages is placed on the Trial Term Part I Calendar for June 14, 1965.