■ EDNA EIFERT, Individually and as Administratrix of the Estate of LEROY EIFERT, Deceased, Respondent, v. KENNETH BUSH et al., Appellants.— Appeal from order of the Supreme Court, Nassau County, dated August 4, 1966, which *inter alia* (1) granted plaintiff permission to examine the County of Nassau with regard to the police training given to the defendant police officers Bush and Fagan, "whether by the Nassau County Police Department or other organizations or persons in methods and techniques of stopping, restraining or pursuing drivers of speeding automobiles", and (2) directed the production at such examination of (a) "the police homicide investigation report file" and (b) "an official having knowledge of the departmental procedures involved." Order modified by striking therefrom the provision numbered (1) hereinabove. As so modified, order affirmed, without costs. The examination shall proceed on 10 days' written notice or at any other time and place as may be mutually agreed upon by the parties. Plaintiff Edna Eifert was injured and her intestate was killed on the night of April 2, 1965 when an automobile owned and operated by Charles Harrington, while being pursued by a County of Nassau police car, operated by the defendant police officers, collided with an automobile owned and operated by plaintiff's intestate. This action is to recover damages from the County of Nassau, the Nassau County Police Department and the aforementioned police officers. *Inter alia*, it is alleged in the complaint that the collision was caused solely by the negligence of defendants in that the police officers "commenced and continued their said improper, careless and negligent pursuit and chase, knowing, and despite the

fact that they then did not have sufficient training and instruction in the proper and acceptable methods and techniques of stopping, restraining, or pursuing drivers of speeding automobiles"; and that, in doing so, they acted "contrary to and in deviation from the accepted, proper and prescribed police manner, methods and techniques of stopping, restraining or pursuing drivers of speeding automobiles." *Inter alia*, Special Term permitted inquiry into the police training given to the police officers, "whether by the Nassau County Police Department or other organizations or persons in methods and techniques of stopping, restraining or pursuing drivers of speeding automobiles". We shall assume *arguendo* that, under some circumstances, punitive damages may be awarded against a county. Nevertheless, we see no reasonable possibility that an appellate court could sustain an award of punitive damages against the county (cf. 19 ALR 2d 906, 908; *Costich* v. *City of Rochester*, 68 App. Div. 623, 626; *Fisher* v. *City of Miami*, 172 So. 2d 455 [Fla., 1965]; *Baynes* v. *City of New York*, 23 A D 2d 756) or against the police officers. Under these circumstances, it was improper to allow the examination into the training issue on the theory, in part, that punitive damages might be awarded against the county and that therefore the training issue was not irrelevant at the present stage of the action. Nor is the training question relevant on the issue of compensatory damages. If the officers were not negligent in the premises, there is no basis for imposing liability on the county, while if they were negligent the county is obliged by statute to pay the judgment irrespective of the adequacy of their training (see, General Municipal Law, § 50-c). The order directs that the "County have the police homicide investigation report file available at the examination and produce for examination an official having knowledge of the departmental procedures involved. Plaintiff may examine as to such procedures and then either apply to the Justice presiding in Special Term, Part II on the day of the examination, after the necessary foundation facts have been developed, for a ruling, or make a formal discovery motion, as she may be advised. No part of the report need be disclosed to plaintiff, however, until further ruling of the Court, obtained by one or the other of the methods suggested". Appellants' brief states that criminal "action was brought against Harrington as a result of the accident. Harrington pleaded guilty to 'criminal negligence in the operation of motor vehicle resulting in death' and was sentenced on January 28, 1966, to time already spent in confinement. He then left the state." In our opinion, plaintiff was entitled to disclosure of at least portions of the police homicide investigation report file (Public Officers Law, § 66-a; *Matter of Wessberg* v. *Beckmann*, 21 Misc 2d 382; *Scott* v. *County of Nassau*, 43 Misc 2d 648; *Welch* v. *Globe Ind. Co.*, 25 A D 2d 70; cf. CPLR 3101; County Government Law, § 2207; L. 1936, ch. 879, as amd.; *Donnelly* v. *County of Nassau*, 46 Misc 2d 895; *Brecht* v. *City of New York*, 14 A D 2d 790). In the circumstances herein, taking into consideration the fact that plaintiff did not appeal, it may not be held that Special Term abused its discretion in its direction as to the production of the police homicide investigation report file. Beldock, P. J., Ughetta and Christ, JJ., concur; Brennan and Hopkins, JJ. dissent from so much of the determination as modifies the order and vote to affirm the order, with the following memorandum: We disagree with the majority that the order should be modified as indicated. The purpose of sections 50-a, 50-b and 50-c of the General Municipal Law is to impose liability upon municipalities "for the negligent operation of vehicles by police and other municipal officers and thereby overcome the hardship visited upon those who, injured by such negligence, would otherwise be without remedy" (*Poniatowski* v. *City of New York*, 14 N Y 2d 76, 80). In our opinion insufficient training of a police officer may constitute negligence

(*Meistinsky* v. *City of New York*, 285 App. Div. 1153, affd. 309 N. Y. 998). With proper training the question may readily arise as to whether the police should have undertaken any pursuit at all under the circumstances existing. Therefore, the foregoing sections may have no application as the county might be held liable by the jury not on the ground of the negligent operation of a vehicle but by reason of the failure to provide proper training as above indicated. As Fuld, J., stated in *Poniatowski* v. *City of New York* (14 N Y 2d 76, 79-80, *supra*): "At common law, police officers engaged in police work were regarded not as employees or servants of the municipality but rather as agents performing a public duty and a governmental function. In consequence, the municipality was immune from suit for injuries to third parties caused by negligence on the part of such officers. (See, e.g., *Matter of Evans* v. *Berry*, 262 N. Y. 61, 67-68; *Bernardine* v. *City of New York*, 294 N. Y. 361, 366.) With the growth of motorized transportation, it became apparent that redress should be afforded persons injured through the negligent operation of municipally owned vehicles by municipal officers. Accordingly, in 1929, section 282-g of the Highway Law was enacted to remedy this situation, and we are here concerned with its successor statutes, sections 50-a and 50-b of the General Municipal Law, which in all essential respects are the same as the earlier provision." We are aware that there exist standard manuals for police training in the methods and techniques of stopping, restraining or pursuing drivers of speeding automobiles which emphasize the dangers to other persons on the highways inherent in pursuit driving; and the failure by the municipalities to train police officers in such techniques may constitute negligence (cf. *Macupa* v. *Town of Bedford*, 27 A D 2d 857 [51 Misc 2d 248; 51 Misc 2d 500.]).