Samuel Tito WILLIAMS, Plaintiff-Appellee,

v.

The CITY OF NEW YORK, Defendant-Appellant.

No. 14, Docket 74–1261.

United States Court of Appeals, Second Circuit.

Argued Sept. 11, 1974.

Decided Nov. 1, 1974.

Rehearing Denied Dec. 19, 1974.

Bernard Burstein, New York City (Adrian P. Burke, Corp. Counsel of The City of New York, L. Kevin Sheridan, New York City, of counsel), for defendant-appellant.

Harry R. Schwartz, New York City (Harry H. Lipsig and Joseph P. Napoli, New York City, of counsel), for plaintiff-appellee.

Before SMITH, TIMBERS and GURFEIN,* Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

The City of New York appeals from a judgment entered in the United States District Court for the Southern District of New York, Robert L. Carter, *Judge,* on a verdict assessing $40,000 in compensatory damages and $80,000 in punitive damages against the City for the malicious prosecution of the plaintiff Williams. The court denied, with opinion filed in the Southern District of New York on November 14, 1973, the City's motion to set aside the verdict. Jurisdiction was based on diversity of citizenship, 28 U.S.C. § 1332. For reasons discussed below, we affirm the award of compensatory damages and set aside the punitive relief granted.

In 1947 the present plaintiff was arrested on murder charges near his home in New York City.[1] That the City police acted on no more than mere suspicion seems indisputable. At his trial, Williams' guilt was proved to the jury's satisfaction virtually exclusively on the basis of his confession of guilt in the police station subsequent to his arrest. Although Williams introduced at his criminal trial substantial evidence that this confession was the product of coercion by the police, the jury found, as a necessary ingredient of its ultimate finding of guilt, that his confession was voluntary. He pursued his rights of appeal through the New York state courts, People v. Williams, 298 N.Y. 803, 83 N. E.2d 698 (1949), and petitioned for, and was granted certiorari by the Supreme Court (though only as to his sentence), Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), but to no avail. After his death sentence—one imposed by the court after a jury recommendation of life imprisonment—was commuted to a life term by Governor Dewey, Williams persistently sought to upset the conviction by available state and federal collateral means. Following the Supreme Court's decisions culminating in Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963), decisions which broadened the concept of involuntariness and enlarged the court's responsibility to insure that a confession is voluntary before it is admitted into evidence, Williams was granted relief by this court on appeal from a denial of his petition for a writ of habeas corpus. United States ex rel. Williams v. Fay, 323 F.2d 65 (2d Cir. 1963), cert. denied, 376 U.S. 915 (1964). Subsequent to this ultimate finding in his favor, Williams commenced the suit presently before the court, alleging that the City had, through its agents (the po-

---

* At the time of oral argument, Judge Gurfein was a United States District Judge for the Southern District of New York, sitting by designation.

1. The lengthy history of this case is set forth in greater detail in our earlier opinion, United States ex rel. Williams v. Fay, 323 F.2d 65, 65–67 (2d Cir. 1963), cert. denied, 376 U.S. 915 (1964).

lice), maliciously prosecuted him in 1947.

The appellant contends that Williams' conviction, though ultimately upset, bars this malicious prosecution action under New York's common law. Moreover, the City contends the suit must fail for insufficient proof of a basic element of the cause of action, lack of probable cause. Alternatively, the appellant allows for the possible validity of the compensatory damage award and the finding of malicious prosecution upon which it is predicated, but attacks the punitive relief on independent grounds: that it was granted pursuant to an erroneous charge by the court of the applicable law and was not warranted as a matter of law on the basis of the proof presented at trial.

## I. MALICIOUS PROSECUTION AND PROBABLE CAUSE

■ The essential ingredients of a malicious prosecution action are malice in pursuing, and lack of probable cause to pursue the present plaintiff's prosecution. With regard to the issue of probable cause, the focus in this case, the test is both objective and subjective:

> A defendant in an action for malicious prosecution cannot make out a case of probable cause, however suspicious the circumstances of plaintiff's guilt, if he knew or believed that plaintiff was not guilty. The existence of probable cause requires the honest and reasonable belief of the defendant who had instituted the proceedings complained of, and if he actually had no belief in the plaintiff's guilt, he cannot establish probable cause.

1 F. Harper & F. James, Jr., The Law of Torts § 4.5 at 312–13 (1956). On the objective side, courts have given weight

in the form of a rebuttable or conclusive presumption of probable cause to a conviction of the present plaintiff in the court of first instance, his success on appeal notwithstanding.

■ In arguing that Williams' suit necessarily fails, the City characterizes the New York cases as conclusively equating a favorable final judgment at the trial level with probable cause to prosecute. The federal rule in this circuit is indeed one of conclusive effect. Dacey v. New York County Lawyers' Ass'n, 423 F.2d 188, 195 n. 12 (2 Cir. 1969), cert. denied, 398 U.S. 929, 90 S. Ct. 1819, 26 L.Ed.2d 92 (1970) (grant of injunction reversed on appeal); Salvage Process Corp. v. Acme Tank Corp., 104 F.2d 105, 107 (2d Cir.), cert. denied, 308 U.S. 599, 60 S.Ct. 131, 84 L.Ed. 501 (1939) (grant of injunction reversed on appeal). The New York common law, however, which governs such substantive matters in this diversity action, Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 518 (1938), accords a conviction ultimately upset only the force of prima facie evidence of probable cause. Laster v. Solotaroff, 273 App.Div. 32, 75 N.Y.S.2d 360 (1st Dept. 1947).[2] The court was thus correct in giving the plaintiff an opportunity to overcome the presumption of probable cause to prosecute arising from his conviction.

■ Caminito v. City of New York, 25 A.D.2d 848, 849, 269 N.Y.S.2d 826, 829 (2d Dept. 1966), aff'd, 19 N.Y.2d 931, 281 N.Y.S.2d 338 (1967), establishes the nature of the proof required to overcome this presumption:

> [A] conviction establishes *prima facie* probable cause for the prosecution unless plaintiff [in the malicious prosecution action] can show that the judg-

---

2. Not to the contrary is Burt v. Smith, 181 N.Y. 1, 73 N.E. 495 (1905), the leading New York case on malicious prosecution and cited by the City to support its position on the probable cause issue. For although Burt v. Smith referred to a Supreme Court decision giving conclusive effect on probable cause to a final judgment, Crescent City Live Stock Co. v. Butchers' Union Slaughter-House Co., 120 U.S. 141, 7 S.Ct. 472, 30 L.Ed. 614 (1887), the New York Court of Appeals did not express a preference for or against this position. Burt v. Smith, *supra*, 181 N.Y. 1 at 6–7, 7 N.E. 495. Burt v. Smith itself involved only the effect to be given a *preliminary* injunction.

ment was obtained by fraud, perjury, conspiracy or other undue means.

In the case before us, it was plainly within the jury's province to find "undue means" in the strong evidence of coercion on the part of the police in obtaining Williams' confession. This is particularly so because of the concurrent lack of evidence to support a reasonable belief by the officers that Williams was guilty when they first brought him to the station. Indeed, if the dubious police practices which secured the present plaintiff's conviction in 1948 do not qualify as "undue means," then it is difficult to imagine what might.

The court correctly upheld the jury's finding of malicious prosecution. The assessment of $40,000 in compensatory damages dependent upon that finding must be upheld.

## II. PUNITIVE DAMAGES

■■ Unlike compensatory damages, punitive damages are assessed to punish the wrongdoer rather than restore the victim. Accompanying this punitive function—and perhaps of greater significance, *cf.* Stevenson v. Hearst Consol. Publications, Inc., 214 F.2d 902, 908 n. 2 (2d Cir.), cert. denied, 348 U.S. 874, 75 S.Ct. 110, 99 L.Ed. 688 (1954)—is a deterrent one, for the award of punitive damages is intended to deter repetition of the tortious conduct by both the particular defendant adjudged liable and others who might be tempted to imitate his conduct. *See,* Walker v. Sheldon, 10 N.Y.2d 401, 404, 223 N.Y.S.2d 488, 490, 179 N.E.2d 497 (1961); Costich v. City of Rochester, 68 App.Div. 623, 626, 73 N.Y.S. 835, 837 (4th Dept. 1902). The degree of misconduct needed to support an award of punitive damages against a municipality has been variously defined by the courts. As a general matter of New York law, however, the applicable standard calls for "the intentional, wanton, willful or malicious commission of some illegal act or . . . such a perverse or obstinate failure to discharge some duty as warrants the presumption of a reckless indifference to the rights

of others which is equivalent to intentional misconduct." Costich v. City of Rochester, *supra,* 68 App.Div. 623 at 626, 73 N.Y.S. 835 at 837.

■ If the focus of the punitive damages awarded to Williams were the individual policemen who allegedly wrenched a confession from him by threats and violence, then the standard elucidated above, essentially one of malice, would undoubtedly be met. But this award was made against the officers' employer, the City of New York, and not the officers themselves. And while vicarious liability for compensatory damages requires only that the servant was acting within the broad outlines of his employment, punitive damages are assessed against the employer with far greater reluctance.

■ The punitive and deterrent underpinnings of a punitive damages award explain this divergence in vicarious liability doctrine. For whereas the purpose of compensatory damages—compensation of the victim—is accomplished whether payment comes from the master or his misbehaving servant, that of punitive damages—to punish the wrongdoer and deter him and others from duplicating his misconduct—is not. Unless the employer is himself guilty of some tortious act (or omission) because his employee has misbehaved, an award punishing the employer and deterring him and others situated to act likewise (i.e., other employers) makes no sense at all.

■ In Craven v. Bloomingdale, 171 N.Y. 439, 447–448, 64 N.E. 169, 171 (1902), the New York Court of Appeals outlined the proof needed to obtain punitive damages against a master whose servant had caused the illegal arrest of a customer, quoting Mr. Justice Gray in Lake Shore & Michigan S. Ry. v. Prentice, 147 U.S. 101, 107–108, 111, 13 S.Ct. 261, 37 L.Ed. 97 (1893) in part as follows:

Exemplary or punitive damages, being awarded, not by way of compensation to the sufferer, but by way of punishment of the offender, and as warning

to others, can only be awarded against one who has participated in the offense. A principal, therefore, though of course liable to make compensation for injuries done by his agent, within the scope of his employment, cannot be held liable for exemplary or punitive damages, merely by reason of wanton, oppressive or malicious intent on the part of the agent. This is clearly shown by the judgment of this court in the case of The Amiable Nancy, [16 U.S. 546,] 3 Wheaton, 546[, 4 L.Ed. 456]. * * * No doubt a corporation, like a natural person, may be held liable in exemplary or punitive damages for the act of an agent within the scope of his employment, provided the criminal intent, necessary to warrant the imposition of such damages, is brought home to the corporation. (Caldwell v. N.J. Steamboat Co., 47 N.Y. 282; Bell v. Midland Railway Co., 10 C.B. [N.S.] 287; S.C. 4 Law Times [N.S.] 293.)

*See also,* Walker v. Lord & Taylor, 236 App.Div. 111, 114, 258 N.Y.S. 96, 99 (1st Dept. 1932). Minimally, therefore, for Williams to collect punitive damages against the City, he must show that those persons in a position of authority in the City's police department in some way authorized, ratified or fostered the acts complained of. But the record of the trial below reveals no attempt by the plaintiff to establish this nexus between the officers whose conduct is at issue and their superiors. Furthermore, the only evidence about involvement of higher-ups in the wrongdoing, evidence elicited from the plaintiff on cross-examination, indicates a probable lack of such involvement.[3] The plaintiff appears to have proceeded on the mistaken assumption that the underlings' malice would supply any deficiency in direct evidence of the superiors' complicity in the tortious acts.[4] His failure to offer evidence of higher level involvement, therefore, requires us to find inadequate support for punitive damages against the City as a matter of law.

Even had the plaintiff established such complicity, moreover, his prima facie case for punitive damages would still have required more. Vindication of the deterrent rationale of a punitive damage award could not simply be assumed under the circumstances. That is, the approximately 25-year interval between the tortious acts and possible time of the award coupled with the added deterrence from repeating such conduct provided by the Supreme Court's toughening of admissibility standards, call for evidence that practices of this sort have continued in New York City. Without proof that the City any longer requires this kind of deterrent medicine, we would be remiss to grant it. Similarly, we cannot engage in speculation that such an award in these circumstances against the City of New York would be justified, in whole or part, for its deterrent impact on other cities' police systems. Without excluding the possibility under New York law that punitive damages may be assessed against a municipality, we must recognize the difficulty of proving entitlement to such damages and the plaintiff's failure in this case even to approximate the necessary proof. *Cf.* Eifert v. Bush, 27 A.D.2d 950, 279 N.Y.S.2d 368 (2d Dept. 1967), aff'd, 22 N.Y. 2d 681, 291 N.Y.S.2d 372, 238 N.E.2d 759 (1968); Costich v. City of Roches-

---

3. By Mr. Walls:

Q. Were there any superior officers in the precinct house at any time that you were aware of, by that I mean lieutenant or a sergeant.

The Court [sic]: I didn't, no sir, none until after they made me sign the confession.

Then they brought some big men in there. That is all I know.

Transcript at 90.

4. The summation on damages by Williams' counsel, transcript at 171–72, witnesses this basic failure in proof. Counsel elaborates upon his client's lost employment opportunities and pain and suffering, but makes no mention whatsoever of any part by department superiors in engendering this loss.

ter, *supra*, 68 App.Div. 623 at 626, 632, 73 N.Y.S. 835 at 837, 841–842.

 Review of the punitive damage award, however, faces a procedural hurdle. The jury's award of punitive damages to Williams rested upon an erroneous statement of the law by the trial court. For the court in its instructions to the jury failed to indicate the need to find that the City, rather than its agents alone, was culpable of any wrongdoing.[5] This was error in the charge. But reversal on this basis normally requires timely objection to the allegedly defective instruction in the district court, Fed.R.Civ.P. 51, and the appellant City neglected to object to the punitive damages charge.

 Under applicable standards, this court may take cognizance of the court's error, though timely objection was not made, if it is "plain and may result in a miscarriage of justice." McNamara v. Dionne, 298 F.2d 352, 355 (2d Cir. 1962). Relief under this plain error doctrine may not be granted casually. Troupe v. Chicago, D. & G. Bay Transit Co., 234 F.2d 253, 259 (2d Cir. 1956). However, consideration of error not properly raised under the rule is warranted in exceptional cases in the interests of justice, Ferrara v. Sheraton McAlpin Corp., 311 F.2d 294 (2d Cir. 1962); *cf.* Johnson v. United States, 318 U.S. 189, 200, 63 S.Ct. 549, 87 L.Ed. 704 (1943); and the demonstrable deviation of the court's instruction here from the appropriate standard, the serious harm suffered by the defendant as a result of this error, and the remediability of this error without a new trial below, combine to justify overlooking counsel's failure timely to object in this instance. The award of punitive damages must be reversed.

The jury's finding that the plaintiff established the basic elements of a malicious prosecution action has adequate support in the evidence introduced at trial. Compensatory damages were thus appropriate. Since Williams did not offer any evidence of complicity by the City in the tortious acts of the officers, on the other hand, and conditions have so changed in the time elapsed, the punitive damage award may not be allowed to stand.

Affirmed as to compensatory damages, reversed as to punitive damages. No costs to either party.

On Petition for Rehearing

PER CURIAM:

The City of New York petitions this court for rehearing or in the alternative rehearing en banc of our recent decision in Williams v. City of New York, 362 F.2d 356 (2d Cir. Nov. 1, 1974). The City's sole contention is that this court erred in its application of New York law. We disagree and therefore deny the petition for rehearing.

In *Williams* we upheld the district court's entry of judgment for compensatory damages based on Williams' malicious prosecution by the City's agents,

---

5. In addition you may allow him punitive damages. Punitive damages are allowed to punish a defendant for his malicious or reckless act and thus to deter others from commissions of like offenses.

To find a verdict for the plaintiff you must as I previously stated, find that the defendant acted maliciously but that finding does not require that you award the plaintiff punitive damages.

If you find that the degree of defendant's malice or recklessness warrants your doing so you may award the plaintiff punitive damages, but if you further find that the defendant mistakenly, but in good faith, believed probable cause you must take that fact into consideration in exercising your discretion as to the allowance of punitive damages for the amount of such damages if you decide to allow.

There is no exact rule by which to determine the amount of punitive damages. The amount you fix as punitive damages need bear no particular ratio or relationship to the amount you award as compensatory damages.

You may fix such an amount as you find in your sound judgment and discretion based on all the facts before you that you feel will serve to punish the defendant and deter others from the commission of a like offense.

Transcript at 181–182.

the police; we reversed, however, the award of punitive damages against the City. In stating the applicable law in New York regarding the effect to be given a conviction ultimately upset, the court quoted Caminito v. City of New York, 25 A.D.2d 848, 849, 269 N.Y.S.2d 826, 829 (2d Dept. 1966), aff'd, 19 N.Y. 2d 931, 281 N.Y.S.2d 338, 228 N.E.2d 396 (1967):

> [A] conviction establishes *prima facie* probable cause for the prosecution unless plaintiff [in the malicious prosecution action] can show that the judgment was obtained by fraud, perjury, conspiracy or other undue means.

*Williams, supra.* Applying this standard to the circumstances in *Williams,* we concluded that "it was plainly within the jury's province to find 'undue means' in the strong evidence of coercion on the part of the police in obtaining Williams' confession." *Id.* In the petition now before the court, the City argues that this holding is erroneous because Caminito v. City of New York, *supra,* in which the Appellate Division found on summary judgment that probable cause for the prosecution existed, cannot be distinguished on its facts from *Williams.*

After being taken into custody, Caminito was interrogated by five or six officers for five hours, locked in a cell with only a wooden bench on which to recline and, after a seven-hour respite, subjected to continuous questioning anew. In addition, Caminito was confronted with three detectives masquerading as witnesses to the crime. They brought further pressures on him to confess his guilt by identifying him as the driver of the holdup car. Finally, 27 hours after his arrest, Caminito signed a confession.

Despite disclosure at trial of the circumstances surrounding the confession, Caminito was found guilty of first degree murder and the judgment was affirmed. People v. Caminito, 265 App. Div. 960, 38 N.Y.S.2d 1019 (2d Dept. 1942), aff'd sub nom., People v. Bonino, 291 N.Y. 541, 50 N.E.2d 654 (1943).

Ultimately, however, under the voluntariness standards prevailing in 1955, these police practices of 1941 were determined violative of Caminito's constitutional rights. United States ex rel. Caminito v. Murphy, 222 F.2d 698 (2d Cir. 1955). In finding probable cause for Caminito's prosecution, the court reviewing on appeal Caminito's malicious prosecution claim refused to correlate this constitutional defect in the prosecution with "undue means."

The City's contention that this court was required to do the same in *Williams* overlooks a critical distinction between the two cases: The allegations of physical brutality to elicit a confession which are abundant in *Williams* are absent in *Caminito.* The significance of this distinction rests upon the meaning of "undue means" as that term is used in the context of rebutting a presumption of probable cause to prosecute.

In general, this term addresses not *any* pressures brought to bear on a criminal defendant to confess his guilt but only those indicative of a belief on the prosecution's part that the defendant is not guilty. "Undue means" is thus essentially a variety of fraud. More specific support for this construction derives from two sources. One is the principle of construction denominated *ejusdem generis:* The court in *Caminito* says that the presumption of probable cause arising from a conviction is rebutted where the conviction is secured by "fraud, perjury, conspiracy or other undue means"; since the three terms preceding "undue means" each involve an intent to perpetrate a fraud upon the court by convicting an innocent person, the final and most generic term of the four would be most sensibly read in a similar vein. Secondly, other courts' close association of "fraud" and "undue means" in their discussion of possible factors to rebut probable cause counsels this gloss on the *Caminito* formulation. *See, e. g.,* McElroy v. The Catholic Press Co., 254 Ill. 290, 98 N.E. 527 (1912); La Chance v. National Pigments & Chemical Co., 104 S.W.2d 693

**364**

(St. Louis Ct. of Appeals, Mo.1937); Brooks v. Super Service, Inc., 183 Miss. 833, 185 So. 202 (1938); Moore v. Winfield, 207 N.C. 767, 178 S.E. 605 (1935). This is particularly so in view of the *Caminito* formulation's essential duplication of standard hornbook law. *See, e. g.,* 1 T. Cooley, Torts § 118, at 397–98 (4th ed. Haggard ed. 1932); 3 Restatement of the Law of Torts § 667 (1938).

Under this view of "undue means," *Caminito* and *Williams* manifest crucial differences. The facts before the Appellate Division in *Caminito* revealed police practices not demonstrative in the court's view of an intent to frame an innocent man. Thus, the persistent interrogation and mock identifications may be seen as practices not deviant from the prevailing prosecutorial norms and as consistent with an intent to prove a guilty man's guilt. As the *Caminito* court stated:

> A determination, 14 years after judgment, that plaintiff's constitutional rights were violated, is insufficient to expose defendant to an action for malicious prosecution for a proceeding *which was properly conducted with probable cause under then-existing State law.*

25 A.D.2d 848 at 849, 269 N.Y.S.2d 826 at 829 (emphasis added). In *Williams,* on the other hand, the physical brutality alleged and apparently believed by the jury in the malicious prosecution case was a marked departure from accepted practices and a probable manifestation of fraudulent intent. Not to allow a finding of "undue means" based on these facts would amount to reading all content out of that term. Our concluding statement on this issue in our opinion bears repetition here:

> Indeed, if the dubious police practices which secured the present plaintiff's conviction in 1948 do not qualify as "undue means," then it is difficult to imagine what might.

*Williams, supra.*

The petition for rehearing is denied.