104 F.3d 349
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Paul PORTEE; Donna Portee; Justin Portee, an infant by
Paul Portee and Donna Portee, his parents and
natural guardians,
Plaintiffs-Appellees-Cross-Appellants,
v.
Henry M. HASTAVA; and Hastava Real Estate,
Defendants-Appellants-Cross-Appellees,
Benjamin Vajda, Defendant.
 Nos. 94-7988, 95-7982.
 United States Court of Appeals, Second Circuit.
 Sept. 13, 1996.
 
 E.D.N.Y.
 AFFIRMED.
 Jane Simkin Smith, New York, NY.
 Adrienne Brewington, New York, NY.
 Present: FEINBERG, MINER, PARKER, Circuit Judges.
 
 
 1
 UPON CONSIDERATION of this appeal from a judgment of the United States District Court for the Eastern District of New York, it is hereby
 
 
 2
 ORDERED, ADJUDGED, AND DECREED that the judgment be and it hereby is AFFIRMED.
 
 
 3
 This cause came on to be heard on the transcript of record and was argued by counsel.
 
 
 4
 Defendants-appellants-cross-appellees Henry M. Hastava and Hastava Real Estate ("HRE") appeal from a judgment entered in the United States District Court for the Eastern District of New York (Mishler, J.). According to the judgment, plaintiffs-appellees-cross-appellants Paul Portee, Donna Portee, and Justin Portee (together, the "Portees") were entitled to receive punitive damages in the amount of $31,000 from Hastava and $1000 from defendant Benjamin Vajda, and Paul Portee was entitled to receive $50,000, Donna Portee was entitled to receive $33,000, and Justin Portee was entitled to receive $18,000 in compensatory damages from Hastava, HRE and Vajda.
 
 
 5
 The Portees are an interracial couple--Donna Portee is white and Paul Portee is black--with one child, Justin, who, at the time of the events at issue, was five years old. On Saturday, December 2, 1989, Donna Portee was shown a house in Island Park, New York, by Benjamin Vajda, an employee of HRE. After Donna Portee expressed interest in the house, she signed a lease and wrote two checks--one to the owner of the house for the first month's rent and the other to HRE for the deposit and agency fee. Thereafter, Donna Portee received the key to the house.
 
 
 6
 On that same day, the Portees went to HRE's offices so that Paul Portee also could sign the lease. Paul Portee testified that, as he walked into HRE's offices, he extended his hand to Vajda, but Vajda did not shake it. At this time, Hastava was present, but he then went upstairs. According to Paul Portee, Vajda became very nervous and left the room to talk with Hastava. Upon Vajda's return, Paul Portee said, "Where's the lease? I want to sign it." Paul Portee claims that Vajda replied, "I don't have the lease," and then walked over to Donna Portee, took her key ring from her hand, and removed the key to the house. Paul Portee then demanded that Vajda return Donna Portee's checks; Vajda, however, did not do so.
 
 
 7
 On May 24, 1990, the Portees brought an action against the defendants for violations of 42 U.S.C. §§ 1981 and 1982, Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 et seq. (the Fair Housing Act or FHA), and N.Y. Exec. Law § 296(5)(a)(1). After a four-day jury trial, the defendants moved for judgment as a matter of law, claiming that the Portees had failed to establish a prima facie case of housing discrimination. The district court denied the motion. Thereafter, the jury returned a verdict in favor of the Portees, awarded general compensatory damages for emotional distress of $100,000 each to Donna Portee and Paul Portee, and $80,000 to Justin. The jury also awarded punitive damages in the amount of $31,000 against Hastava and $1000 against Vajda.
 
 
 8
 Following the jury verdict, the defendants moved for a new trial and renewed their motion for judgment as a matter of law. The defendants argued, inter alia, that the damages were excessive. By an order dated May 11, 1994, the district court denied the motion in all respects except as to the compensatory damages. The district court found that the awards for compensatory damages "shocked the judicial conscience," and ordered a partial new trial on the issue of compensatory damages. By an order dated June 14, 1994, the district court reaffirmed the May 11th order in its entirety. Following a retrial, the jury awarded compensatory damages to Paul Portee in the amount of $50,000, to Donna Portee in the amount of $33,000, and to Justin in the amount of $18,000.
 
 
 9
 On November 30, 1994, the Portees moved for an award of attorney's fees in the amount of $88,793 and costs in the amount of $4,480.55. The district court found that the requested attorney's fees were excessive and reduced the total to $45,385.55 in attorney's fees and $955 in costs. This appeal and cross appeal followed.
 
 
 10
 On appeal, Hastava claims that the district court erred in determining that: (1) the Portees established a prima facie case of housing discrimination; (2) the compensatory damages award was not excessive; (3) the exercise of a peremptory challenge against the only black venireperson was based on race; and (4) there was sufficient evidence to support the jury award of punitive damages. We find these claims to be meritless.
 
 
 11
 In order to establish a prima facie case of housing discrimination, a plaintiff must show that "he is a member of a statutorily protected class who applied for and was qualified to rent or purchase housing and was rejected although the housing remained available." Soules v. United States Dep't of Hous. & Urban Dev., 967 F.2d 817, 822 (2d Cir.1992). The facts presented at trial support a prima facie case of housing discrimination. First, Vajda allowed Donna Portee to sign the lease and gave her the key to the house but then refused to allow Paul Portee to sign the lease. This indicated that Vajda and HRE rejected the Portees as tenants. Further, the fact that Vajda took the house key from Donna Portee's key ring after he met Paul Portee also supports a finding of rejection. The testimony of Paul Portee reasonably supports the finding that the rejection was based upon his race. There is also evidence that the house thereafter was rented to someone else.
 
 
 12
 Next, Hastava contends that the compensatory damages awarded to the Portees were excessive. We will not overturn a compensatory award unless the "award is so high as to shock the judicial conscience and constitute a denial of justice." Zarcone v. Perry, 572 F.2d 52, 56 (2d Cir.1978). Here, the compensatory damage awards are not so excessive so "as to shock the judicial conscience." This Court and other courts have upheld similar awards. For instance, in Secretary, Hous. & Urban Dev. v. Blackwell, 908 F.2d 864 (11th Cir.1990), a housing discrimination case, the Eleventh Circuit upheld a compensatory damages award of $40,000. Id. at 872. Similarly, in Wade v. Orange County Sheriff's Office, 844 F.2d 951 (2d Cir.1988), a Title VII action, we found that the defendants' discrimination that led to the plaintiff's humiliation at work and public embarrassment supported a $50,000 jury award. Id. at 955. In light of these cases, and the difficulty in quantifying emotional distress, we hold that the jury's compensatory awards were not excessive.
 
 
 13
 Also, Hastava argues that he should have been permitted to exercise a peremptory challenge against the only black venireperson. We review a district court's determination under Batson v. Kentucky, 476 U.S. 79 (1986), for clear error. See United States v. Taylor, No. 95-1318(L), 1996 WL 467140, at * 11 (2d Cir. Aug. 16, 1996); Hernandez v. New York, 500 U.S. 352, 369 (1991). In accordance with Batson, the district court heard arguments presenting a race-neutral justification for the challenge. However, the court stated: "I find that the challenge to Mr. Ellis is based solely on race, and I reject it." Taylor, 1996 WL at * 11, instructs that in this situation an appellate court must "accord substantial deference to the decision below and reverse only if that decision was clearly erroneous." Applying that standard, we cannot say that the district court committed reversible error.
 
 
 14
 Lastly, Hastava contends that the award of punitive damages against him should be vacated. We reject this argument. In this Circuit, a principal may be liable for punitive damages for the discriminatory acts of his agent only if he "in some way authorized, ratified or fostered the acts complained of." Williams v. City of New York, 508 F.2d 356, 361 (2d Cir.1974). Donna Portee testified that Hastava witnessed the initial encounter between Vajda and Paul Portee. Further, it would not have been unreasonable for the jury to conclude that a conversation related to Paul Portee's race had taken place between Hastava and Vajda after Vajda left to talk to Hastava. Finally, the jury could have concluded that Hastava fostered a discriminatory atmosphere at HRE by failing to offer guidance to his agents in the area of fair housing. Therefore, there was sufficient evidence adduced at trial to find that Hastava "authorized, ratified or fostered the acts complained of."
 
 
 15
 On cross appeal, the Portees argue that the district court erred in reducing the award of attorney's fees. Although the filing of the cross appeal was not timely, we have the discretion to disregard the lack of timeliness under the circumstances. See Texport Oil Co. v. M/V Amolyntos, 11 F.3d 361, 366 (2d Cir.1993). In any event, there is no merit to the Portees' argument. "The district court's determination of the amount of attorney fees will be reversed only if the court abused its discretion." Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d 1158, 1167 (2d Cir.), cert. denied, 510 U.S. 945 (1993). In the present case, the district court properly exercised its discretion, having found inconsistencies in the billing, vague entries in the fee application, and an excessive hourly rate.
 
 
 16
 We have considered the defendants' remaining contentions, and we find them all to be without merit.